THE CENTRAL RAILROAD CO. OF NEW JERSEY v. ISAAC MOORE.

1. A plaintiff suing for an injury, caused by the negligence of the defendant, will not be entitled to recover, if his own negligence contributed to the injury in such way that if he had been guilty of no negligence, he would have received no injury by that of the defendant.

2. The law does not in such case require of the plaintiff the greatest possible caution. The caution required is the ordinary care which a prudent person would take under such circumstances; and what would constitute ordinary care, varies with the circumstances. More vigilance and care are required in crossing a railroad track traveled by trains of a high, uncontrolable rate of speed, than in crossing an ordinary highway.

3. The negligence of the plaintiff to prevent his recovery, must directly tend to produce the injury, or must be the proximate cause of it.

4. Where the facts are clear and undisputed, and show a want of ordinary care on the part of the plaintiff, the question is for the court to decide; but if the evidence is doubtful and contradictory, and the inference to be drawn from it questioned, it is for the jury to determine.

5. Where the evidence of the plaintiff shows, without contradiction, a want of ordinary care on his part, it is the duty of the court when requested, to order him to be non-suit, and if the court refuse so to do, the defendant is entitled to his bill of exceptions, and the judgment will be reversed. But when the court wrongfully orders the plaintiff to be non-suit, and he submits, it is doubtful whether he can have his bill of exceptions, or bring a writ of error.—*Elmer, J.*

The writ of error in this case was to the Supreme Court, and the error assigned was founded upon the refusal of Justice POTTS, before whom the cause was tried, at the Somerset circuit, to non-suit the plaintiffs, to which decision a bill of exceptions was taken.

The action below was an action on the case. The gravamen in the declaration was, that the defendants " so carelessly, negligently, unskillfully and improperly ran, drove, governed and directed their locomotive, engine and cars," upon their railroad, that thereby the plaintiff, who was driving his horses and wagon along a highway, across the railroad of the defendants, was run over and injured by the locomotive and cars. The plea was the general issue.

The plaintiff on the trial proved that, at the time in question, he was occupied in driving a stage from New Bruns-

wick to Somerville, in the vicinity of and nearly parallel to the railroad of the defendants. That the stage road crossed the defendants' railroad, upon a level with the rails at the Middlebrook crossing, at an oblique angle of about twenty-five degrees. That the stage road, for thirty-three chains, ran, before and next to the Middlebrook crossing, within two hundred and forty-seven feet of the railroad track, and in view of it, except when interrupted by occasional houses. That at a point in the stage road, one hundred and forty-seven feet east from the crossing, opposite McNabb's house, there is an uninterrupted view down the railroad to the east, for eight hundred and twenty-five feet, the rail track being five feet higher than the wagon track, which rises from that point to the crossing, and that for the whole distance of this eight hundred and twenty-five feet, a train on the railway could be seen without interruption, by any person walking or driving on any part of the stage road, within one hundred and forty-seven feet of the crossing. That on the day in question, the plaintiff and the railway train were both approaching this crossing from the east, in the afternoon, about the usual time for the passing of the train, and also of the passing of the stage. That when opposite McNabb's house, the plaintiff stood up in his stage and looked backwards in the direction from which the train was coming, and then sat down and whipped up his horses, and at a gait of about six or eight miles an hour, drove up the ascent to the railway track, where he was met and struck by the cow-catcher on the train of the defendants. That the train was a little behind time ; was running much faster than usual at that place, at or over thirty miles an hour, and did not blow any whistle, or ring any bell continuously, as approaching the crossing. The plaintiff's arm was fractured, and he was otherwise very seriously injured by the collision.

When the plaintiff rested, the defendants' counsel moved for a non-suit, on the ground that although there might be sufficient evidence of negligence on the part of the defendants, to be submitted to the jury, yet, that by the evidence of the plaintiff, it clearly appeared that his own negligence

contributed to the injury, and that without it the collision would not have occurred. It appeared that he was in the habit of driving over this part of the road at that hour, and knew it was the usual hour for the passing of the train; that when opposite McNabb's house, he rose and looked back for the train; if he then saw the train within the eight hundred and twenty-five feet, it was great negligence and rashness to attempt, by whipping up his horses, to outstrip and pass before a train, which he knew could not be checked or controlled by the engineer, when he might see a collision at hand. If he did not see the train, when he stood up at McNabb's, he was equally negligent in not looking back for a train that he expected, that could be seen the whole distance, and *might* meet him at the crossing. The court refused to order the non-suit, to which decision the defendants excepted.

The cause was argued by Mr. *Frelinghuysen* and Mr. *Zabriskie* for the plaintiff in error, and by Mr. *Brown*, Mr. *Nevius* and Mr. *Scott* for the defendants.

For the plaintiff in error, it was insisted.

I. That no person can recover for an injury caused by the negligence of another, when his own negligence has contributed to the injury. It was admitted that the negligence of the plaintiff to defeat his recovery, must be only want of ordinary care, such as every prudent person would take under like circumstances, and where the injury was directly caused by the negligence of the defendants, the negligence of the plaintiff must also contribute directly to the injury, to defeat his recovery, and that in such case, negligence, which remotely contributed to the injury, would not defeat the recovery. To sustain these positions, the following authorities were cited:—*Angell on Carriers*, § 556, 557, & 635; 11 *East* 60, *Butterfield* v. *Forrester*; 5 *Car. & P.* 375, *Pluckwell* v. *Wilson*; 5 *Car. & P.* 421, *Luxford* v. *Large*; 8 *Car. & P.* 373, *Wood* v. *Baird*; 19 *Wend.* 399, *Rathbun* v. *Payne*; 21 *Wend.* 615, *Hartfield* v. *Roper*; 5

The Central Railroad Company v. Moore.

*Hill* 282, *Brownell* v. *Flagler;* 12 *Pick.* 177, *Lane* v. *Crombie;* 6 *Hill* 592, *Brown* v. *Maxwell;* 5 *Barb. S. C. R.* 338, *Spencer* v. *The Utica and Sch. Railroad Co.;* 11 *Barb. S. C. R.* 112, *Clark* v. *The Syracuse and Utica R. R. Co.;* 4 *Comst.* 357, *Munger* v. *Tonawanda R. R. Co.;* 13 *Barb. S. C. R.* 9, *Haring* v. *New York and Erie R. R. Co.;* 6 *Law Rep.* (*June,* 1853,) 83, *Trow* v. *Vermont Central R. R. Co.;* 19 *Conn.* 567, *Beers* v. *Housatonic R. R. Co.;* 13 *Howard* 109, *Williamson* v. *Barret;* 6 *Whart.* 311, *Simpson* v. *Hand;* 1 *Am. Law. Reg.* (*Dec.* 1852,) 97, *New York & Erie R. R. Co.* v. *Skinner;* 2 *Zab.* 189, *Vandergrift* v. *Rediker;* 4 *Zab.* 268, *Central R. R. Co.* ads. *Moore;* 6 *Cowen* 191, *Harlow* v. *Humiston;* 9 *C. & P.* 601, *Sills* v. *Brown;* 10 *Mees. & Welsby* 546; 7 *Pick.* 185, *Thompson* v. *Briggs;* 21 *Wend.* 188, *Barnes* v. *Fitzhugh;* 5 *Mees. & Welsby* 248; 5 *Denio* 256; 1 *Cr. & Mees.* 21.

II. That it was negligence in the defendant, at least amounting to want of ordinary care, to attempt to drive across a railroad at an hour when the plaintiff knew the train usually passed, either by attempting to drive ahead of the train if in sight, or if he did not see the approach g train when he stood up at McNabb's, by approaching the crossing without again looking back for the expected train, as it was a matter of mathematical certainty, that if he had looked down the road in the direction of the expected t 1, when half way from McNabb's, or seventy feet from e crossing, he must have seen the train, even if both were go—ing at the highest speed testified to by any witness.

III. That the burden of proof is upon the plaintiff, he must show positively that he was injured by the defendants while he, himself, was using ordinary care; 2 *Greenl. Ev.* § 473, 12 *Pick.* 177, *Lane* v. *Crombie;* 12 *Meic.* 417, *Parker* v. *Adams.*

IV. That in such case where, by the plaintiff's own proof, it appears that his own negligence contributed to the injury, it is the duty of the court to order a non-suit. 21 *Wend.* 623, *Hartfield* v. *Roper;* 4 *Comst.* 548, *Labar* v. *Koplin;* 1 *Wend.* 379, *Stuart* v. *Simpson;* 13 *Barb. S. C. R.* 9, *Ha*-

*ring.* v. *N. Y. & E. R. R. Co.;* *Ante* 268, *Moore* v. *Central R. R. Co., N. J.*

The cases which seem to hold the contrary doctrine will be found to be cases where the facts are doubtful, or where the negligence of the defendants directly caused the injury, and the negligence of the plaintiff that contributed to it was remote and not at the time of the injury; *Lynch* v. *Nurdin,* 1 *Ad. & E. N. S.* 29; *Beers* v. *Housatonic R. R. Co.* 19 *Conn.* 569; *Walker* v. *Jackson,* 10 *Mees. & Welsby* 161; *and Aldridge* v. *Great Western Railway Co.,* 3 *Mann. & Gr.* 519; are all cases where plaintiff's negligence was remote.

V. That if the court improperly refuse to non-suit, it is cause for reversal; 2 *Halst.* 289, *Haight* v. *Morris;* 19 *Johns.* 157, *Foot* v. *Sabin;* 13 *Johns.* 334, *Pratt* v. *Hull;* 3 *Zab.* 478, *Den ex Dem. Elle* v. *Young;* 3 *Zab.* 581, *and* 2 *Zab.* 372, *Mershon* v. *Hobensack;* 2 *Tidd Pr.* 1147; 1 *Arch. Pr.* 229; 1 *Peters* 473; *Vandergrift* v. *Rediker, Ub. Sup.*

On the part of the defendant in error it was contended.

I. That this was a case of gross negligence on part of the defendants below. That their engineer, while driving at an unusual and unsafe rate of speed, with Moore and his stage in full sight for eight hundred and twenty-five feet, before he ran over him, and having his face towards Moore, saw that he was approaching the crossing, and continued on, without slackening his speed, and without giving warning, either by bell or whistle; and seeing what he did, run his train directly upon him, at a place where Moore had equal right of crossing with the train.

And that where the defendants cause the injury by gross negligence on their part, they are not excused because the plaintiff's negligence contributed in part to the injury; 10 *Mees. & Welsby* 545, *Davies* v. *Mann;* 19 *Wend.* 399, *Rathbun* v. *Payne;* 5 *Esp.* 444, *Clay* v. *Wood;* 1 *Ad. & Ell. N. S.* 29, *Lynch* v. *Nurdin;* 7 *Metc.* 274; 16 *Conn.* 420, *New Haven Steamboat Co.* v. *Vanderbilt;* 8 *C. & P.* 373, *Woolf* v. *Beard;* 4 *Bing.* 628, *Bird* v. *Holbrook;* 3 *Man. & Gr.* 59, *Smith* v. *Dobson;* 5 *Exch. R.* 240, *Rigby* v. *Hewitt;* 9 *C. & P.* 613, *Raisin* v. *Mitchell.*

The Central Railroad Company v. Moore.

II. If this was not gross negligence on the part of the engineer, there was no want of ordinary care on the part of Moore, such as to defeat his recovery. It is not any want of care on the part of the plaintiff and will defeat his recovery. It is not because he might, by some *extraordinary* precaution, have avoided the injury.

On the first trial it did not appear that Moore had stood up at McNabb's, and looked down the road where he could see down it for eight hundred and twenty-five feet— now the use of this precaution appears. If the train had been going at its usual rate of speed, and was not then within sight, he could, at the rate of speed at which he was proved to be traveling, have crossed the track before the train would have traversed half that distance. This calculation was that of a prudent and careful man, and was defeated by the unusual and reckless rate of speed at which the train was proved to have been driven to make up its loss of time.

And whether this conduct of Moore was negligent or not, was a question of fact for the jury; and as such, was rightly submitted to them by the court. Negligence is a question of fact; 1 *A. & E.* 539, *Lynch* v. *Nurdin;* 19 *Conn.* 569; 3 *M. & Gr.* 515; 9 *Ad. & E.* 261; 6 *Shep.* (18 *Maine*) 174, *Story* v. *Gowen;* 10 *Mees. & Wels.* 161, *Walker* v. *Jackson;* 3 *Bing. N. C.* 468, *Vaughan* v. *Menlove;* *Story on Bailments* § 11; *Angell on Carriers* § 16; 3 *Kent* (5th *Ed.*) 230; 1 *Howard* 28, *Smith* v. *Condry;* 1 *Ad. & E. N. S.* 36; 2 *C. & P.* 422; 7 *Scott N. R.* 835, *Parker* v. *Great Western Railway;* 7 *Metc.* 274, *Munroe* v. *Leach;* 10 *Mees. & Wels.* 545.

The opinion of the court was delivered by

HAINES, J. On the trial of this cause, the plaintiff below having rested, the defendants moved the court to non-suit the plaintiff, upon the ground that he had not shown any legal cause of action against them.

The refusal of the court of non-suit is assigned for error here.

The province of the court and that of the jury are different and distinct; of the one it is to declare the law, of the other to settle the facts.

If the facts clearly settled or uncontroverted, present a case in which the plaintiff is not entitled to recover, it is the duty of the court to non-suit; or if the case made, be such that the court would set aside a verdict in favor of the plaintiff, as contrary to the evidence, the plaintiff should be called. In so doing, the court acts strictly within its province, and declares the law arising from the clearly settled or uncontroverted facts.

But if the facts be controverted or not manifest, it is the duty of the judge to submit these to the jury, under proper instructions, thus leaving to that branch of the court the exercise of its peculiar functions, and affording to the parties the right of trial by jury, which the constitution has declared, shall remain inviolate.

This rule has been very properly expressed in *Labar & Koplin*, 4 *Comstock*, 548, by MULLETT, J., who in delivering the opinion of the court of errors, said, " If the evidence will not authorize the jury to find a verdict for the plaintiff, or if the court would set it aside, if so found as contrary to evidence, it is the duty of the court to non-suit the plaintiff; but the court should be extremely cautious on the subject of interfering with the province of the jury, who, by the principles and plan of our jurisprudence, have exclusive jurisdiction over the facts of the case."

This action is for damages sustained by the plaintiff by reason of the alleged negligence of the defendants. To maintain it, the plaintiff must show that he was in the exercise of due care on his part, and that the defendants were not in the exercise of like care on their part.

What amounts to due care, must depend upon the circumstances of the case in which it is to be exercised.

That conduct which in one instance would be considered due care, would, in another, be regarded as gross negligence.

The caution necessary to shun the contact of common carriages, differs greatly from that required to avoid the collision of locomotives.

The care needful to the crossing of a common highway, is much less than that requisite to the passing a railroad.

It must be proportionate to the impending danger. " In every community it must be judged of by the actual state of society, the habits of business, the general usages of life, and the changes, as well as the institutions, peculiar to the age." *Story on Bailment,* § 11.

" As a general proposition, it must be held that a plaintiff cannot recover for an injury occasioned by the negligent conduct of another, where his own wrongful act, negligence, or want of ordinary care, has so essentially contributed to the injury, that without it, the negligence of the defendant would have caused the injury. It is not, however, every want of care on the part of the plaintiff, that will excuse the neglect of the defendant; there must be a want of such a degree of care as it was incumbent on the plaintiff or as it was his duty to exercise; that is, such care as ought reasonably to be expected from one in his situation.

" The fault of the plaintiff to prevent his recovery, must be one directly tending to produce the injury."

In *Beers* v. *The Housatonic R. R. Co.,* 19 *Conn. Rep.* 566, a case well considered and correctly decided, STORRS, J., having considered the numerous and apparently conflicting authorities on the subject, has expressed the true rule. " There having been," he remarks, " negligence on the part of the defendants, it was not sufficient for them, in order to excuse themselves, to show merely that there was a want of care on the part of the plaintiff, unless it was a want of such a degree of care as it was incumbent on the plaintiff to exercise." In other words, if the plaintiff exercised all the care that the law required of him, the defendants cannot deliver themselves from the effect of negligence on their part; otherwise the plaintiff would be left without redress for an injury wrongfully inflicted upon him by the defendants, where the former had been guilty of no want of duty.

The rational rule, and the one, as we think, established by the best authorities in reference to the case, incumbent on the plaintiff, is, that it be ordinary care, as it is termed, which (as stated by Ld. Denman, chief justice, in *Lynch* v. *Nurdin,* 1 *Adol. & Ellis* 36, *N. S.,* interpreting that phrase as used by Ld. Ellenborough in *Butterfield* v. *Forrester,* 11 *East* 60) means, "that degree of care which may reasonably be ex‑pected from a person in his situation, and is synonymous with reasonable care. It would seem that the principle that one who had himself used reasonable care, but had, notwith‑standing, suffered an injury from the negligence of another, should have redress for that injury, is so obviously just, that it carried with it its own vindication. But it does not rest on its own inherent reasonableness. The authorities in sup‑port of it are numerous and explicit, and although it has been supposed that the cases go so far as to decide, that the want of *any degree* of care whatever, however great on the part of the plaintiff, concurring with the negligence of the defendant, will preclude a recovery by the former, we are satisfied, after a careful examination of all the author‑ities, that no well considered case, properly understood, sustains that position." "Reasonable care requires that in all cases, the precaution should be proportioned to the pro‑bable danger of injury, and the question as to the exercise of such care, is to be determined like all other questions of fact."

Whether negligence or the want of such reasonable care is to be determined by the court, or by the jury, is a question which has been much discussed. In *Doorman* v. *Jenkins,* 2 *Adol. & Ellis* 256, the judges all concurred in saying that no general rule could be laid down. "That in some cases, the negligence depended entirely upon the law, and then it was for the court; in others, it depended upon facts, or in‑ferences from facts, and then it was a case for the jury."

This is but equivalent to what we have before affirmed, that where the facts are established, it is the duty of the court to declare the law arising from them ; but where the facts are disputed, or the inference to be drawn from them

is questioned, it is the duty of the jury to determine them under the instructions of the court.

In this case two questions arose—*first*, whether the plaintiff, at the time of the collision, was in the exercise of reasonable care; and *second*, whether the defendants were guilty of negligence.

As to the first question, it is contended, on the part of the plaintiff, that he was in the exercise of such care; that, as he came near to the crossing, he stopped at the points from which he could have a view of the railway, and looked out to see if the train was approaching; that not seeing the train or hearing its signal bell or whistle, he was justified in attempting to cross; or that if he saw the train, it was at such a distance, that with its usual rate of speed at that place, he was guilty of no fault in supposing he could pass without harm. On the part of defendants, it is insisted that he must have heard the signal whistle and have seen the cars so near the crossing, that he was guilty of negligence in attempting to pass before them, and that he rashly ran upon his own destruction. On the one side, it is said that he drove with care, used every necessary precaution to avoid a collision; on the other, that he was rash, and that knowing the usual time of passing of the train, he observed its approach, attempted to race with it, whipped up his horses, and invited the injury. Here were involved questions which might, with propriety, be left to the jury.

Again, as to the conduct of the defendants, it is averred on the one side, that they were guilty of negligence, in running the train at an undue rate of speed at that place where their road intersected the turnpike, an old highway much traveled.

On the other hand, it is said, the train was not moving at an improper rate of speed. The legislature has not, and perhaps should not, prescribe the rate of speed to be observed upon railroads.

It is left to the rules of the common law, which limits the speed only to such rate as will not unnecessarily put in jeopardy life or limb. Upon the track where there is no

crossing, they may increase it to any degree, consistent with with the safety of their passengers. In approaching public crossings, or passing through populous places, more care is required, the speed should be reduced and every reasonable precaution observed to prevent a collision.

Now, whether the defendants' train was running at an improper rate of speed at that place, or whether it was running at its usual rate, or faster, was a question of fact, upon which neither the witnesses nor the counsel agreed, and it was proper to be left to the jury to settle.

Again, the defendants were charged with negligence in omitting to give the signal of their approach to the crossing, where the collision occurred, and they insist that it is fairly to be inferred from the evidence, that the signal was duly given; while the plaintiff maintains that the bell was not rung, nor the whistle blown, at the proper distance from the crossing; that the sound of the whistle heard by the witnesses, was the alarm given after the plaintiff was discovered to be in danger, and too late to be of use to him.

So it is charged, that the defendants were negligent in not providing proper brakemen to check the train. That at the time of the discovery of the danger, no brakeman was at his post; that on the alarm being sounded, a man in the cars, supposed to be a brakeman, sprang to the brake, but too late to check the speed of the train so as to save the plaintiff from harm.

The defendants deny that there was any want of care in this particular, and their liability on that account.

These were questions of fact, which it is the peculiar province of the jury to determine, and were properly submitted to them.

The question here, is not whether the jury took a correct view of the case, and rightly determined it.

There are many cases properly submitted to the jury, and determined by them very differently from what the court would have done, if the matter had been submitted to it alone.

The inquiry is not whether the jury were correct in their

conclusion, but whether the justice erred in submitting the cause to them.

The opinion here expressed, is not to be considered as conflicting with the opinions of the Supreme Court, delivered at a recent term in this cause, but as substantially concurring with them.

The question presented there, was different from that raised here, and hence, a difference in the form of expression, and possibly, an apparent difference in the conclusion. That was on a rule to show cause why the verdict of the jury should not be set aside; this, whether the justice erred in refusing to non-suit the plaintiff.

Upon mature consideration of the case, I cannot say that the justice erred, but believe that he was correct in not ordering the plaintiff to be called, and that the judgment should be affirmed.

ELMER, J.   I concur in affirming the judgment in this case, for the reasons assigned by Judge HAINES. The case turned mainly on the conduct of the plaintiff himself. The law is well established upon the plainest principles of reason, that if the culpable negligence of the plaintiff contributed to produce the collision and the consequent damage, he cannot recover for it. But, whether such was the fact in this case, depended upon numerous circumstances, and in a considerable degree upon the intentions of the parties, and the inferences to be drawn from the facts detailed, which it was peculiarly the province of the jury to weigh and determine. Many cases have occurred, and will doubtless occur again, where the negligence plainly resulted from the undisputed facts; as where cattle were permitted to run at large, where persons were unlawfully walking or driving on the railroad track, or attempted to cross it at a rate of speed, or under circumstances, necessarily implying negligence, and in such a case it is the duty of the court so to decide. But in this case, the plaintiff was driving a public stage along the highway, at the accustomed time, so that it depends upon the inference to be drawn from the facts, whether he

did or did not exercise that ordinary caution which the law requires. When it was before the Supreme Court, after the first verdict, the facts were in some respects different, and I think a new trial was very properly granted. But the question for our decision, is not whether we think the jury drew the right inferences from the facts presented, which I think exceedingly questionable, but simply whether it was error in law for the judge who tried the cause, to submit to the jury the question of negligence, instead of deciding it himself, and I am entirely satisfied that he decided that question correctly. It must be a plain case that will justify a reversal for refusing to non-suit. That he rightly directed the jury upon the matters submitted to them, is not disputed, no part of his charge having been excepted to.

In regard to the question which was considerably discussed by counsel, in consequence of a suggestion made by me during the argument, whether a bill of exceptions can be taken for the refusal of the judge to non-suit, I think, as the case is presented, there is no difficulty. Inasmuch as it is the duty of the judge to declare the law, and to decide that the plaintiff is not entitled to recover, if such be the legal result of his evidence, I see no reason to prevent that question from being presented to the higher court, in the shape of a bill of exceptions to his refusal so to decide, if the plaintiff thinks proper so to shape his case, and the judge acquiesces, as in many cases it may be proper he should. There is then, no incongruity in the record. Whether the judge is bound to seal a bill of exceptions, to a decision which it is optional with the party whether he will submit to or not, and especially in a case where the defendant thinks proper to go into evidence on his part, which may essentially vary the legal character of the case, is a different question, not now before us.

The legality of a bill of exceptions, taken by the plaintiff, when he has submitted to the non-suit, may be well doubted. If he wishes to obtain the decision of the higher court, the proper course for him to take is to appear when he is called,

and require the judge to direct the jury upon the point of law, and take his bill of exceptions to the charge. If he acquiesces in the non-suit, he is voluntarily out of court, and it is simply absurd to allow him to complain of what he has formerly consented to. If the judge takes it upon himself to rule that he is bound to submit to a non-suit, that is an error to which he may except; (*Strother* v. *Hutchinson*, 4 *Bing. N. C.* 83;) but that he cannot except, if he voluntarily submits, is settled in England; (*Corsar* v. *Reed*, 8 *En. L. & E. R.* 380;) and by many cases in the courts of the United States, referred to by counsel. Even in New York, where the practice of taking bills of exceptions for allowing a non-suit, seems to have originated, and where, alone, so far as I am aware, it is held that the court can order a non-suit against the plaintiff's consent, Chancellor WALWORTH, pronouncing the judgment of the court of errors, in the case of *Van Wormer* v. *Mayor of Albany*, 18 *Wen.* 169, says, if the plaintiff voluntarily abandons his cause, he cannot avail himself of his bill of exceptions to reverse a judgment which was the necessary consequence of his own act. I am aware, that in this state the old court of errors in the case of *Haight* v. *Morris*, 2 *Hal.* 289, seems to have sanctioned such a proceeding; and that in the case of *Den* v. *Young*, 3 *Zab.* 478, 4 *Zab.*, and perhaps in some other cases, the Supreme Court, and this court, have decided cases brought before them, upon bills of exceptions, where there was a non-suit; but this seems to have been by the acquiescence of both parties. The question has never been deliberately decided in this court, as at present organized, and ought not, in my opinion, to be considered as definitely settled.

Judgment affirmed.

*For Affirmance*—Judges ARROWSMITH ELMER, HUYLER, VALENTINE, CORNELISON, HAINES, OGDEN and WILLS.

*For Reversal*—None.

CITED in *Durant* v. *Palmer*, 5 *Dutch.* 546; *Aycrigg's Ex.* v. *N. Y. & E. R. R. Co.*, 1 *Vr.* 461; *Telfer* v. *Northern R. R. Co.*, 1 *Vr.* 199; *West* v. *N. J. R. R. & Tr. Co.*, 3 *Vr.* 94; *N. J. Ex. Co.* v. *Nicolls*, 3 *Vr.* 168; *N. J. R. R. & Tr. Co.* v. *West*, 4 *Vr.* 432; *N. J. Ex. Co.* v. *Nichols*, 4 *Vr.* 439; *Voorhees* v. *Woodhull's Ex'rs*, *Id.* 485; *D., L. & W. R. R. Co.* v. *Toffey*, 9 *Vr.* 529.