Vanderbeck et al. v. Hendry.

---

ISAAC S. VANDERBECK, FRANCIS J. VANDERBECK, AND WILLIAM E. PIERSON v. JAMES HENDRY.

1. A mere permission to pass over dangerous lands, or an acquiescence in such passage for the benefit or convenience of the licensee, creates no duty on the party giving such permission, except to refrain from acts willfully injurious.

2. One who enjoys such permission is only relieved from being a trespasser, and must assume all the ordinary risk attached to the nature of the place or the business carried on.

Error to Hudson Circuit.

* *Rev.*, p. 498, § 4.

Vanderbeck et al. v. Hendry.

The defendants below owned a lumber yard in Jersey City, built on piles, and through it from that street were three passages or gangways, sixteen feet wide. Wayne street, at that point, had been filled in over the bed of the Hudson river. It was not graded or curbed, but was legally open to the public. The whole yard was built over the water, and was private property. On each side of the gangways lumber was usually piled, and the ways were used for loading and unloading the material. These ways were made of planks laid close together, and the lumber was stored up each side of them, on string-pieces fastened upon the piles a few feet apart.

The plaintiff below was a minor about ten years of age. His father and family lived about two hundred or three hundred yards from the board yard, and he went with an elder sister, about thirteen years old, to gather some wood in the yard. They were in various parts of it, but did not succeed in getting any wood; and finally, while looking through some loose timbers at boys who attracted their attention, two piles of lumber fell, injuring the plaintiff severely.

The suit was brought to recover damages for the injury, and was tried at the Hudson Circuit.

The principal question in the cause was, whether the defendants, at the time of the injury, owed the plaintiff any legal duty in the mode of piling lumber in the yard.

The jury, on the trial below, were instructed that the defendants should be held to the duty of reasonable care towards the plaintiff in the piling of the lumber, so as to prevent any danger that could likely come to children, who might reasonably be expected to frequent such locality, without any conscious purpose of mischief or of unlawful act. To this the defendants excepted.

The jury found a verdict for the plaintiff, and a writ of error was brought to this court.

The cause was argued by—

*I. W. Scudder*, for the plaintiffs in error.

*A. S. Cloke*, for defendant.

BEDLE, J. Hendry, the plaintiff below, is a minor, and, at the time of the injury complained of, was about ten years of age. The defendants were lumber merchants in Jersey City, and had a lumber yard on Wayne street, built on piles, and through it from that street were three passages or gangways, sixteen feet wide, running northwardly a distance of about eighty feet, to another gangway of about the same width, running east and west along the water the length of the yard. Wayne street, by the yard, had been filled in over the bed of Hudson river; it was not graded or curbed, but was legally open to the public. The whole yard was built over the water. On each side of the three gangways the lumber was usually piled, and the ways were used for loading and unloading the material. The whole premises were private property. The passage-ways were made of planks laid close together, and the lumber was stored up each side of them, on string-pieces fastened upon the piles a few feet apart. The plaintiff lived with his father, two or three hundred yards from the yard. His sister, then fourteen years old, asked him to go with her to a certain place for wood, where she had previously got some. She had a basket. They two, with a girl younger than the sister, went to the place intended, but found no wood to be had. They then went to the corner of Greene and Wayne streets, which is about one hundred and seventy-five feet from the yard, and while there saw some men throwing out pieces of wood to boys, from a saw mill adjoining the yard. They went there, but got no wood, as the boys would not let them have any, and told them to go away. The sister then said : " Come see what kind of a place this is," and they went around the block of lumber, passing up through the first gangway, being the one towards the west, to the one at the north, and then around into the second. They heard some boys under the dock, and ran to see them. The boys were getting pieces of wood out of the water, and the plaintiff and his sister got down on their hands and knees and looked through the timbers at them. While in this position two piles of lumber

fell, resulting in killing the sister and severely injuring the plaintiff. The immediate cause of the falling does not appear. The plaintiff says he did not touch the lumber, and there is no evidence that his sister or the other girl did. The height of the lumber was about six feet, and consisted of two single rows of the length and width of the single plank. It fell so that the ends came a little over on the gangway. The children must have been lying with their bodies partly on the gangway, and the rest over where the lumber was usually laid. Another pile of lumber had adjoined the two, which had been taken away shortly before, and there is where the bodies partly lay. The place of injury was fifty-four feet from Wayne street. The boy says that he had never been in there before, and that his sister said she had not. He also says that they were not looking to pick up chips, but just went in to see what kind of a place it was. The plaintiff claims that the lumber was not properly secured by binders, and for that reason it fell. The general habit of properly binding it was proved and not disputed. The yard was a place where children would frequent in large numbers to pick up chips and wood, and sometimes to break off the binders and do other acts of mischief. Orders were given by the defendants to drive them off if found there, and during the day there was a watchman charged to execute the orders. The same were generally executed; yet, notwithstanding that, children would still frequent the place. That immediate locality, east of Greene street, was occupied for lumber yards and factories, yet it was a populous neighborhood in a city. The passage-ways would occasionally be used by persons on foot to get from Wayne to Greene street. That was done by stepping from the northerly gangway on to an old canal boat lying there, by means of a plank, and thence to other docks and to Greene street, but there was no regular way across for the public. The verdict was for the plaintiff.

The chief question in the cause is, whether the defendants, at the time of the injury, owed the plaintiff any legal duty

in the mode of piling their lumber. The neglect complained of is merely in omitting to properly bind the lumber together. There is no pretence of any intentional wrong, or of placing there any means of danger in the nature of a trap, or of doing any act in the nature of a fraud. The case rests upon a charge of mere neglect of duty, and no legal responsibility can ensue unless there was a breach of some duty to the plaintiff. There was no *personal* relation existing between the parties from which it could arise, and if it existed, it must have been of a public nature, and for the breach of which the plaintiff had sustained a peculiar injury. The public duty could arise, if at all, only by reason of the proximity of the falling lumber to Wayne street or to the gangway. Wayne street is a public highway; the gangway is not. The place of the injury was fifty-four feet from the street, and, besides, the plaintiff did not reach it directly from the street. The case cannot, therefore, be brought within the principle governing excavations and places of danger, made and left exposed on land adjoining a legally existing public way, so near thereto as to be dangerous to persons lawfully using it in the exercise of ordinary care. *Barnes* v. *Ward,* 9 *C. B.* 393; *Hounsell* v. *Smyth,* 7 *C. B.* (*N. S.*) 732; *Binks* v. *S. Y. R. W. Co.,* 3 *B. & S.* 244; *Hardcastle* v. *S. Y. R. W. Co.,* 4 *H. & N.* 67.

These cases all have reference to nuisances along ways legally existing. So far as Wayne street is concerned, the action is entirely groundless.

As to the proximity of the danger to the gangway, only one principle need be referred to. The case must come within that, or it is not sustainable. It has been substantially held that although a way may not have been dedicated to the public or otherwise legally established for the use of the public, yet if the owner of premises over which it passes has exhibited an intention that it shall be used by the public, either as a means of access to his property or over it, and, by the manifestation of that intention, has induced or allured the public to its use, that those using it within the

scope of the purpose manifested are entitled to be protected from dangers to the way, by reason of obstructions or interferences created during its existence, and resulting from the want of ordinary care on the part of the owner or those acting within his authority. The leading case on this subject is *Corby* v. *Hill*, 4 *C. B.* (*N. S.*) 556, and the doctrine is ably discussed in *Sweeney* v. *The Old Colony and Newport R. R. Co.*, 10 *Allen* 369. See, also, *West* v. *N. J. R. R. Co.*, 3 *Vroom* 91, for an indication of the principle.

This principle, however, must be distinguished from that of a mere permission to pass over lands. It is well settled that the permission for, or acquiescence only in the passage over dangerous lands, whether naturally so or by reason of their use, creates no duty, except to refrain from acts which are willfully injurious or knowingly in the nature of a trap, and except, also, where the circumstances are such as that concealment of hidden dangers would be in the nature of fraud, and then the duty would be to disclose them. The rule is, that he who enjoys the permission or passive license is only relieved from the responsibility of being a trespasser, and must assume all the ordinary risk attached to the nature of the place or the business carried on. *Hounsell* v. *Smyth*, 7 *C. B.* (*N. S.*) 731; *Binks* v. *S. Y. R. W. Co.*, 3 *B. & S.* 244; *Gautret* v. *Edgerton*, *L. R.*, 2 *C. B.* 370; *Stone* v. *Jackson*, 16 *C. B.* 199.

This rule is entirely different from the other. The one is based on a purpose manifested on the part of the owner, that a way shall be used by the public, and the same is so held out as a means of access to a house, store, or of passage through lands, and the public, or such as have occasion, are expressly or impliedly invited to use it, according to the purpose intended. The other is a mere acquiescence or permission for the benefit or convenience of the licensee.

In carefully examining the case the following is the necessary result of the evidence: the passage-ways were in no sense intended for the use of the public, except as they

might have occasion to go there for the purpose of business; the public, otherwise than to that extent, were not either expressly or impliedly invited or allured to pass through them. The occasional passing through by persons to reach Greene street was not encouraged by the defendants, or in any way acquiesced in, otherwise than as may be implied from not expressly forbidding it. The presence of children in the passage-ways was without any consent or even acquiescence of the defendants, for it cannot be disputed that generally they were driven out of the yard. Under these circumstances, the defendants ought not to have been held responsible to the plaintiff for mere neglect in the mode of piling the lumber. The plaintiff was only a volunteer, and not there within the scope of the purpose of the way, or by any act of the defendants induced to come into it. The exposure of such gangways, clearly intended for business uses alone, although in a populous locality, where children might be tempted from curiosity or idle purpose to go, is not sufficient, under the authority of *Corby* v. *Hill* or the cases analogous, to require the defendants either to fence their yard or pile their lumber with reference to the fact that children might be injured by mere neglect in its piling.

In submitting the case to the jury, the defendants were held to the duty of reasonable care towards the plaintiff in the piling of the lumber, and so as to prevent any danger that would likely come to children, who might naturally and reasonably be expected to frequent the locality without any conscious purpose of mischief or conscious unlawful act. Upon more mature reflection than could be given at the circuit, I am satisfied that the case does not warrant that view, and that the judgment should be reversed.

The age of the plaintiff could have no bearing, except on the question of contributory negligence; and if the defendants had been guilty of any neglect of duty towards him, his tender years might have shielded him from any imputation of carelessness.

The question of duty towards a *visitor* merely is not necessarily involved in this case, and no intimation upon that is therefore intended.

Judgment reversed.

BEASLEY, CHIEF JUSTICE, and SCUDDER, Justice, concurred.