RICHARD A. F. PENROSE, appellant,

*v.*

CHARLES E. LEEDS et al., respondents.

1. Specific performance of a contract to convey lands will not be decreed when the complainants have unreasonably delayed the filing of their bill, and the defendant has meanwhile made extensive improvements upon the land greatly in excess of its original value.

2. Under a bill for specific performance, it appeared that the complainants and others had conveyed to the defendant a tract of land, with the understanding that the defendant should reconvey to the complainants a part of the tract; that then a dispute arose with regard to the quantity to be reconveyed; and the defendant executed and delivered a deed for less than the complainants were entitled to; and that the complainants were chargeable with laches, in not filing their bill for a conveyance of the residue until after the defendant had made extensive improvements thereon—*Held*, that as a condition of sustaining the bar of laches interposed by the defendant's answer, the court would require the defendant to pay the complainants what would be the present value of the residue, if the defendant's improvements thereon had not been made.

On appeal from a decree advised by Vice-Chancellor Bird, in *Leeds* v. *Penrose*, reported in *17 Stew. Eq. 464*.

*Mr. Cooper* and *Mr. Pancoast*, for the appellant.

*Mr. Crandall,* for the respondents.

The opinion of the court was delivered by

DIXON, J.

In June, 1883, the complainants in the court below and others conveyed to the defendant, Penrose, for $3,100, about five hundred acres of salt marsh near Atlantic City, with an understanding that he should reconvey to the complainants a portion thereof lying along the southerly side. After the deed for the whole tract had been delivered, and the price paid, a difference sprang up between the parties as to the extent of the parcel to be reconveyed, the complainants claiming about ten acres, the defendant conceding about one acre. In September, 1883, the defendant delivered to Mrs. Abbie Leeds, the representative of the complainants, a deed to the complainants for the one-acre plot, which she retained, still, however, insisting that the residue of the ten-acre tract should be included. The defendant immediately began to improve about sixty-two acres of the property, embracing the land in dispute, by deepening the adjacent thoroughfare and building a wharf along its bank, by ditching, dyking and filling up the meadow, and by constructing streets. In this work he spent about $40,000, of which about $9,000 was laid out upon the land in controversy. The complainants were cognizant of these improvements as they proceeded, but took no measures to enforce their claim until January, 1886, when they filed the present bill, praying specific performance of the contract or such other relief as may be agreeable to equity. The defendant answered, denying that the agreement embraced more than he had already conveyed, and also insisting that the laches of the complainants barred their equitable remedy. The vice-chancellor found that the contract was such as the complainants alleged; that the defendant's refusal to perform it was fraudulent; that the complainants were entitled to a conveyance of the disputed territory (except one-third of a lot which the defendant had sold), upon allowing to the defendant $6,000 for his improvements, and that, for such

sum of $6,000, the complainants should release to the defendant
five designated lots, comprising about half an acre of the disputed
tract, which the vice-chancellor estimated at $5,625, and should
pay the defendant $41.67 in cash, which, with $333.33 received
by the defendant for the third of a lot sold as before stated,
would make up $6,000. A decree was accordingly rendered,
which, in effect, gives to the complainants, for their nine acres
of meadow, about eight and a half acres of improved land, and
to the defendant, for his $9,000 expended in improving the nine
acres, about half an acre thereof. The defendant appeals.

We think, with the vice-chancellor, that the complainants
have made out the bargain as they aver it, but we do not find
that the conduct of the defendant was characterized by fraud.
The extent of the land to be reconveyed depended on the loca-
tion of what was called "Higbee's corner," and the attempt to
ascertain this position resulted in an honest difference concerning
a point which even yet is not entirely freed from doubt. It is
only after considerable hesitation that we place this corner where
the complainants claim it, at point B in lot 30, on the defend-
ant's map.

We also think that the statute of frauds presents no obstacle
to the enforcement of the contract. The defendant's answer
admits that, during the transaction, he signed a deed in terms to
convey to the complainants the land claimed by them, and after-
wards destroyed it, on discovering, as he thought, that Higbee's
corner was not where that deed placed it. That instrument was
the requisite written memorandum of the agreement.

But, in our judgment, the laches of the complainants precludes
their right to specific performance. It is a settled doctrine in·
equity, that a complainant seeking specific performance of a con-
tract to convey lands must institute his suit without unreasonable
delay, and before any material change affecting the interests of
the parties has taken place. *Watson* v. *Reid, 1 Russ. & M. 236;
Taylor* v. *Longworth, 14 Pet. 172; Merritt* v. *Brown, 6 C. E. Gr.
401.* In the present case, the complainants deferred the filing
of their bill for two years and three months after the defendant
had warned them that he denied their right, and during this

Penrose v. Leeds.

period they saw the defendant making the improvements before mentioned, which so altered the character of the property in question, that what had been, when the dispute arose, worth a few dollars per acre, was selling, when the suit began, for some hundreds of dollars per lot. For this delay no explanation is offered, except the unsatisfactory one that the lawyer whom the complainants wished to employ was too busy to proceed. These circumstances should bar specific performance.

But it cannot be overlooked that the bar thus interposed must itself rest upon equitable grounds, and that, if allowed absolutely, it will result in leaving with the defendant the title to about nine acres of land which rightfully belonged to the complainants, and for which he has made them no compensation. Equity requires that the bar be permitted to stand only on condition that just compensation now be made.

Such compensation should be awarded in cash. It is scarcely practicable, nor would it accord with any reasonable explanation of the conduct of the parties, to award it by dividing the land between the complainants and defendant. But we may properly infer that the defendant, by retaining the land against the complainants' claim, elected to buy it if it proved to be theirs, and that the complainants, by acquiescing in such retention, elected to sell it; and the legal medium for that transaction is money.

Our judgment, therefore, is, that the existing decree should be reversed; that the cause should be remitted to the court of chancery, and there it should be ascertained what would be the present value of the land in controversy if the improvements made upon it by the defendant had not been made, and that a decree should be entered requiring the defendant to pay to the complainants the value so determined, or, in default, ordering the land to be sold and such payment to be made from the proceeds.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, KNAPP, MAGIE, VAN SYCKEL, BROWN, CLEMENT, COLE, MCGREGOR, SMITH, WHITAKER—12.