On November 6th, 1922, the complainant entered into a contract with the defendants Casper for the sale of certain lands at Secaucus. Passing over the great many mistakes made in this contract as to the time of passing title, counsel agree that the title was to be passed on December 6th, 1922. The title was not passed on that date because the complainant did not have the $1,000 required to be paid upon the passing of the title. On February 14th, 1923, counsel for defendants Casper wrote a letter to the complainant fixing February 19th, 1923, as the date of passing title, or the contract to be at an end. This period may have been too short. Orange Society v. Konski, 94 N.J. Eq. 632.
During the month of March, 1923, the parties met at Mr. Safyer's office and discussed the question of the three mortgages then existing on the premises in question and other property. Mr. Safyer was fearful of passing the title with the mortgages so situated, although, on the record, they appeared to be $4,000, $500 and $500, respectively. Seven hundred and fifty dollars had been paid on account, making the whole sum due $3,250, which amount the complainant, by the terms of the contract, was to assume. It was then agreed that Mr. Safyer, representing the defendants Casper, should see the mortgagee and endeavor to adjust the matter so that the $3,250 of mortgage should be a lien solely upon the premises in question. He afterwards reported to Mrs. Casper that the mortgagee would not accede to his request and desired that the loans be discharged, they being then past due. *Page 72 
Nothing further transpired in the matter, the Caspers did not give a further reasonable notice making time of the essence of the contract, and the complainant remained quiescent. It is apparent that the complainant's difficulty was in paying the $1,000. Matters remained in this shape until May 15th, 1923, when the Caspers made a contract with the defendant Jacob Mistak to sell the premises in question and another tract for $9,000, title to pass on June 15th, 1923. On May 18th, 1923, Mr. Safyer, representing the complainant, wrote to Mrs. Casper, saying, "my client has informed me that he is ready to take title to the premises sold by you to him in Secaucus, New Jersey, and pay the $1,000 cash as agreed." And then he says: "I desire to say that I have received indirect information that you have disposed of this property to another purchaser. I would advise that if this is so you may get yourself into litigation, and therefore suggest that you call to see me immediately." Mrs. Casper did not call in pursuance of this request. Three days thereafter, namely, on May 21st, 1923, the contract between Casper and Mistak was recorded. Mr. Degelman, who, apparently, acted for the Mistaks, says he knew nothing about the contract with the complainant, but does not deny that Safyer telephoned him, and, in response to this message, he said he represented Mr. Mistak.
The defendants Mistak say that they knew nothing about the contract of the complainant, and that two or three days after the contract with the Mistaks was signed, he (Mistak) went up to the premises to look them over, and saw Ulikowsky, and told him "I want to buy it," and that Ulikowsky said nothing. Mrs. Mistak also said that she talked with both the complainant and his wife, two or three days after the deposit was made, and said, "probably you will be angry because I bought this property," and that Mrs. Ulikowsky then said, "I would buy that, but I haven't got the money." Ulikowsky swears that he never had a conversation with the Mistaks. I presume he meant before the deed was delivered, because he did have a conversation with them after the deed was delivered, when Casper introduced Mistak to *Page 73 
the tenants, and he then made no claim. It is significant, however, that Mr. Safyer's letter, three days after the date of the contract to Mistak, speaks of his information as to the sale of the property, which, in effect, corroborates the Mistaks as to this conversation.
I am satisfied, therefore, that when the Mistaks spoke to the complainant about the purchase of the property he did not assert any claim against it, and this was a sufficient inquiry to satisfy the law and justify the Mistaks in taking the title.
But there is another point which is not disputed, namely, the laches of the complainant in not commencing his suit earlier. The Mistaks knew nothing about the contract with the complainant. The contract was not recorded. The complainant had knowledge, within a day or two after the Mistaks made their contract, of the fact of the Caspers selling, or contracting to sell, the property, as evidenced by the letter of May 18th, 1923. An examination of the record could have disclosed the record of the contract of May 21st, 1923, providing for the passing of the title on June 15th. The title was not passed on June 15th, but on July 9th, and the deed was recorded on the same date. Complainant filed his bill on July 10th, one day after the recording of the deed from the Caspers to the Mistaks. Taking the date of the record of the contract, May 21st, complainant did not file his bill until sixty days after he had this knowledge. I think that this delay is sufficient to estop the complainant from asserting his claim against the Mistaks. Had he proceeded promptly and had a decree in his favor, the Mistaks would have been protected, for, out of the $1,000 which complainant was to pay the Caspers, the $200 deposit made by the Mistaks could have been returned; and, by his delay, he permitted the Mistaks to pay, in addition, $3,800 (or $4,000 on or prior to the delivery of the deed), and to give a mortgage for $5,000. The delay of sixty days before filing the bill, to my mind, constitutes inexcusable delay, and the complainant was guilty of laches. It should not have taken more than a week to prepare and file the bill, and the complainant was *Page 74 
bound to file his bill before the time fixed in Mistak's contract for passing the title, or, at least, before the title passed. This he failed to do, and should not now be permitted to assert his claim against the Mistaks. Houghwout v. Murphy, 21 N.J. Eq. 118; affirmed, 22 N.J. Eq. 531, 549; Penrose v. Leeds,46 N.J. Eq. 294, 296, and cases cited; Fry Spec. Perf. 524, etseq.
In dealing with this question of laches, I am not applying it to the case as if it was between the complainant and the Caspers; the application has reference only to that as between the complainant and the Mistaks, who purchased in good faith, without knowledge of the claim of the complainant, after making what might be deemed inquiry on the premises. I am dealing with this question of laches because it was argued by counsel.
I might add that the Mistaks state that they did not buy the hog shed, and a reasonable time will be allowed to the complainant to remove the same.
After the cause was tried Mrs. Mistak was made a party to the suit.
I will advise a decree that the bill be dismissed without prejudice to any rights which the complainant might have against the Caspers.