76 N.J. Super. 451 (1962)
184 A.2d 873
JOSEPH KOVACS, PLAINTIFF-APPELLANT,
v.
THE PENNSYLVANIA RAILROAD COMPANY, A CORPORATION OF THE STATE OF PENNSYLVANIA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1962.
Decided October 16, 1962.
*452 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. George J. Shamy argued the cause for plaintiff-appellant (Messrs. Pincus, Shamy & Sheehan, attorneys; Mr. Shamy, of counsel).
Mr. Stephen V.R. Strong argued the cause for defendant-respondent (Messrs. Strong & Strong, attorneys; Mr. Karl R. Meyertons, of counsel).
The opinion of the court was delivered by PRICE, S.J.A.D.
By this appeal plaintiff seeks to reverse the action of the Superior Court, Law Division, granting defendant's motion for summary judgment. R.R. *453 4:58-3. The motion was based on plaintiff's factual assertions contained in his deposition, his answers to interrogatories, and the claimed basis for recovery of damages against defendant as expressed in the statement of his alleged cause of action at pretrial conference and incorporated in the subsequent pretrial order. Defendant, on appeal (as in the trial court in support of its motion for summary judgment), "accepts, without qualification, the plaintiff's version of the facts as gleaned" from the aforesaid sources. It contends that thereby it is shown palpably that there is no genuine issue as to any material fact challenged and that it is entitled to a judgment as a matter of law.
In assessing the propriety of the trial court's action in the case at bar, the burden is on defendant to "exclude any reasonable doubt as to the existence of a genuine issue of material fact." All inferences of doubt in the instant case are to be drawn against defendant (the movant) in favor of plaintiff. United Advertising Corp. v. Borough of Metuchen, 35 N.J. 193, 196 (1961); Sokolay v. Edlin, 65 N.J. Super. 112, 120 (App. Div. 1961). So viewed, we consider the proofs which the trial court had before it in concluding that defendant should as a matter of law prevail on its motion for summary judgment.
Plaintiff's depositional description of the circumstances surrounding the happening of the accident disclosed that on the night of January 7, 1961 he went to defendant's New Brunswick station with the intention of going to Newark by train. He purchased a ticket. Ascertaining that the scheduled departure of the train was not imminent, he "walked around to kill time" and also stopped at a nearby tavern where he consumed "about two" bottles of beer. Returning to the station, he reached the track level via an escalator and, as he did so, "heard the train whistle" and observed the train in motion "just taking off." He "made a run for it." Endeavoring to board the moving train, he "grabbed hold of the left-hand bar," reached "the second step of the train" and "was trying to reach the right-hand bar when the train *454 gave a sudden jerk" and he "landed on the platform" and "passed out unconscious." (The complaint alleged that he "lost his leg and sustained serious * * * injuries.") Amplifying his aforesaid testimony, he said that he ran along the platform "about half" of the length of a coach, which he thought was the "next to the last car" on the train, "got onto the train" and was "on the second step" (later, he said: "I went on the first [step] and was trying for the second step"), when "the train gave a jerk." He also stated in his deposition that the train was "picking up speed" as he attempted to board it. He further testified as follows:
"Q. And when you say you boarded the train on the first or second step, the train was picking up speed? A. Yes.
Q. As it usually does. Isn't that right? A. That's the time when it jerked me, it was picking up speed.
Q. When you say `jerk' you mean it was picking up speed? A. Yes.
Q. This is what it usually does when it picks up speed from slow speed to a faster speed? A. Uh huh.
Q. Right? A. I guess so, sir.
Q. When you say `jerk' what you really mean is it is going a little faster than from [sic] before? A. Yes.
Q. Picking up speed? A. That's right.
Q. This is nothing unusual? A. No.
Q. This is just picking up speed? A. That's right."
The pretrial order contains plaintiff's description of the accident in the following terms:
"Plf. contends that on Saturday Jan. 7, 1961, he was attempting to board a Pennsylvania Railroad train destined for Newark at the New Brunswick railroad station. At the time the plf. attempted to board the train it was in motion with the door entrance still in the position for receiving passengers. As he boarded the train the train jerked and plf. fell under the train. Plf. contends that the deft. was negligent in that it permitted the entrance to remain open while the train was in motion and that it negligently operated its train."
Plaintiff answered an interrogatory, which sought plaintiff's "version of the accident," as follows:
"Plaintiff was attempting to board a P.R.R. train destined for Newark at the New Brunswick station. At the time the plaintiff attempted *455 to board the train it was in motion with the door entrance still in the position for receiving passengers. As he boarded the train the defendant corporation negligently and carelessly permitted its train to jerk and caused the plaintiff to fall under the train. Pltf also contends that the defendant negligently permitted the entrance to remain open while the train was in motion and that it negligently operated its train."
In seeking reversal of the summary judgment, plaintiff's counsel initially urges, as he did in the trial court in resisting defendant's aforesaid motion, that his client had "not as yet presented" his version; that until he presented his "version completely and fully, such a motion, as a matter of law," was "not proper." Amplifying his position before the trial court, plaintiff's counsel said that "specific facts are * * * brought forth by means of a trial," and that he had "no need to prove [his] case now on a summary motion." Before the trial court he added the following statements, which in substance he repeated and attempted to explain on the argument of the appeal:
"[Mr. Shamy] * * * I haven't dealt with the law because I think it is premature for me to deal with the law.
The Court: On the motion don't you think you should have some law to aid your position?
Mr. Shamy: Not at all.
The Court: You come in and give four reasons as to facts, but you don't cite one case to help the Court.
Mr. Shamy: I don't have to cite a case. The Court doesn't have the facts before it, how can the Court possibly make a determination? The Court hasn't heard all of the evidence, or all of the testimony.
The Court: If the Court doesn't have the facts before it, it is because the plaintiff did not bring the facts to the attention of the Court.
Mr. Shamy: I can bring the facts, I can bring my witnesses.
The Court: Either by way of deposition or Answers to Interrogatories, or by pre-trial order.
Mr. Shamy: I have no such obligation. I present my facts, I set forth in the pre-trial memorandum the general contention and Answers to Interrogatories. General contentions. Specific facts are then brought forth by means of trial. Until I put those witnesses on the stand, until I produce that testimony, this Court, or any other Court, doesn't have the facts. For this Court to rule on their [sic] deposition of my witness that this is a fact, then as a matter of law, *456 to me  I didn't think this Court could take this motion seriously. I'm rather shocked that the Court has.
The Court: I think the Court takes any motion seriously, or the Court should. That is why we have motions.

* * * * * * * *
Mr. Shamy: The statute [R.S. 48:12-152] does not concern this case.
The Court: Why not?
Mr. Shamy: I don't think that any determination can be made by this Court as to contributory negligence as a matter of law until all the facts are brought forward. All the facts will not be brought forward until they are produced at the time of trial. There is no obligation on the part of the plaintiff to produce by affidavit, by deposition, by production of witnesses, or any other means, all the facts at this time merely because the defendant had made a motion for summary judgment.
I rest on that. If your Honor is of another opinion, your Honor should rule as he sees fit."
Plaintiff's contention is devoid of merit. The trial court properly held that the defendant's motion was not premature and that plaintiff was called upon to meet it. Amabile v. Lerner, 74 N.J. Super. 443, 447 (App. Div. 1962); N.J. Mtge. and Inv. Corp. v. Calvetti, 68 N.J. Super. 18, 32 (App. Div. 1961); Robbins v. City of Jersey City, 23 N.J. 229, 241 (1957); Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954); Wade v. Six Park View Corp., 27 N.J. Super. 469, 471 (App. Div. 1953). See also, Heljon Management Corp. v. DiLeo, 55 N.J. Super. 306, 313 (App. Div. 1959). Under the circumstances revealed by the record before us, plaintiff herein had the duty of demonstrating that an issue of fact warranting trial on the merits existed.
Plaintiff, on this appeal, next urges that on the proofs before the trial court summary judgment in favor of defendant was erroneously granted. We disagree.
Clearly, on his own version of the accident defendant was guilty of contributory negligence as a matter of law. R.S. 48:12-152 provides as follows:
"Any person injured by an engine or car while walking, standing or playing on a railroad or by jumping on or off a car while in motion *457 shall be deemed to have contributed to the injury sustained and shall not recover therefor any damages from the company owning or operating the railroad." (Emphasis supplied)
Our decisional law also is destructive of plaintiff's alleged cause of action. Zelman v. Pennsylvania Railroad Co., 93 N.J.L. 57 (Sup. Ct. 1919); Lozier v. D., L. & W.R.R. Co., 3 N.J. Misc. 988, 989, 130 A. 454 (Sup. Ct. 1925).
Plaintiff initially endeavors to overcome the effect of the aforesaid statute and decisional law by contending that he had actually boarded the train when the jerk occurred because he had advanced as far as the second step. Alternatively, he asserts that at least there was presented an issue of fact for jury resolution whether "plaintiff was injured by the `jumping on' the train, or whether he had in fact already boarded the train in safety and was injured by the `jerk' which the train subsequently gave." Amplifying this contention, he urges that "it was not convincingly established that the plaintiff's conduct in boarding the train was the proximate cause of his subsequent fall"; that it is arguable that the proximate cause of the accident was not in his "attempt to board the moving train" but was the "jerking" of the train after he had pulled himself up to the second step, and that the "jerk" occurred "when the conductor attempted to stop the train's motion to permit the passenger to board."
The complete answer to the aforesaid contentions is that the proofs before the trial court in the instant case may not be so distorted as to warrant an inference that plaintiff's actions placed him in the category of an ordinary passenger, injured as the result of a railroad's negligence, occurring after he had completed the boarding of a train. To warrant the rejection of an application for a summary judgment it must be clear that there exists, as heretofore observed, "a genuine issue of a material fact." Heljon Management Corp. v. DiLeo, supra, 55 N.J. Super., at p. 313 (Emphasis supplied). The principle that summary judgments are "to be cautiously granted, * * * and the party opposing the motion indulgently treated by resolving all doubts in favor *458 of trial, * * *" does not mean that a defendant is to be denied protection against groundless and frivolous claims. Robbins v. City of Jersey City, supra, 23 N.J., at p. 240. As heretofore noted, plaintiff saw the train moving out of the station, pursued it for a half-car length, grabbed a handlebar and swung himself from the platform so that his right foot had reached the second step when he fell from the train and was injured. To suggest that, under those circumstances, a genuine factual issue was raised as to whether plaintiff had completed his act of boarding the train and that subsequent negligence of the train's operators was the proximate cause or a proximate cause of his injuries, is a fatuous contention.
Plaintiff also contends that his case comes within one of the exceptions outlined in Zelman, supra, at pp. 58-59 in the following language:
"* * * Moreover, the general rule of law is that the boarding or alighting from a moving railroad train is presumably and generally a negligent act per se, and in order to rebut this presumption and justify a recovery for an injury sustained in getting on or off a moving train it must appear that the passenger was, by the act of the defendant, put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety."
Plaintiff states (as expressed in his brief) that "when some act is done by the Railroad which creates a confidence in the boarding party that the attempt can be made in safety, the plaintiff is not then guilty of contributory negligence." He contends that as the train steps were not shut off by the closing of the door there was an implied invitation to plaintiff to jump on the moving train. We find no basis whatever for so concluding.
Plaintiff further asserts that an invitation to board the train may be inferred from the contents of a signed statement made to the New Brunswick police department by *459 a trainman who at the time of the accident was standing on the platform of the car plaintiff attempted to board. This statement did not form any part of the proofs presented to the trial court on the argument of the motion for summary judgment and properly has no place in the resolution of this appeal. Asserted justification by plaintiff's counsel for its inclusion in the record before us is that a portion of it was read by plaintiff's counsel to the trial judge during the argument on the motion for summary judgment. Plaintiff, however, elected not to reproduce the statement in whole or in part through the medium of deposition or otherwise, in preparation for his resistance to the motion for summary judgment, and we allude to it only because oblique reference was made to it in the trial court's disposition of the motion.
The portion of the trainman's statement, read as aforesaid to the trial judge, was as follows:
"At approximately 9:26 p.m. I signaled the conductor that all passengers were loaded. Conductor Wingard then started the train with the communicating signal. As the train started to leave the station a man walked out of the west entrance to the tracks. I was standing high on the train platform holding on to the proper grab iron. Said man started to run for the train and put his left hand on the southwest grab iron, and ran along the train. I said, `Wait a minute,' and reached for the communicating whistle line in order to stop the train so that he might board it. While doing this I saw the man fall on his face."
The trial court, in disposing of this phase of the case, made the following statement:
"* * * Did the defendant railroad company invite the plaintiff to board the train by its conduct? I think not. Plaintiff clearly testified that no one was on the platform, that he saw no one on the train. How then could anyone have invited or encouraged plaintiff to board the train?
With respect to the open doors of the moving train, I find no invitation. To interpret an open door on a moving train as an invitation to the public, and to attempt to board the train strains my sense of common sense and logic. As was pointed out in Zelman v. Pennsylvania Railroad, 93 N.J.L. 57, the movement of the train and the position of its doors cannot reasonably be expected to coincide perfectly, *460 if any sort of schedule is to be met in these times of rapid transit. Furthermore, passengers are bound to use reasonable care for their own safety."
It is apparent from plaintiff's own deposition that he neither saw the trainman nor heard his aforesaid utterance. It played no part in the accident whatsoever. On his deposition plaintiff was specifically interrogated as follows:
"Q. You got onto what, a step? A. Second step.
Q. How about the first step? A. I was on the second step.
Q. You didn't go on the first? A. I went on the first and was trying for the second step.
Q. Was anyone there at that time? A. I didn't see anyone.
Q. You didn't see anyone at that time? A. No.
Q. You had no conversation with anyone prior to the accident? A. No.
Q. From the time you arrived at the top of the stairs to the happening of the accident you had no conversation? A. No conversation.
Q. And you saw no one in the train at that time? A. I didn't see no one."
There is nothing in the proofs justifying an inference that "some direction was given to the passenger [plaintiff] by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated * * * [to] create a confidence that the attempt could be made in safety." Zelman, supra, at p. 59.
There is not the slightest doubt that the proximate cause of this accident was plaintiff's negligence in attempting to jump on a moving train.
The judgment of the trial court is affirmed.