THE NEW JERSEY RAILROAD AND TRANSPORTATION COMPANY ADS. JAMES THOMAS WEST.

1. The passage of two trains in opposite directions, along contiguous tracks, in a populous city, so as to meet at or near a crossing properly used by foot passengers, without the presence of a flagman, and without lessening their speed, held to justify a jury in determining that the railway company was guilty of culpable negligence, although flagmen were kept at the places designated in a city ordinance, and the speed did not exceed what was authorized for one train by the ordinance.

2. The jury held to be justified in exonerating the plaintiff from the charge of negligence, when he was struck by one of the trains, while he was endeavoring to guard against injury from the other.

Action on the case, and rule to show cause, &c.

The suit was brought by the plaintiff to recover damages for injuries sustained for being struck on the head by one

of defendants' engines, within the city of Newark. The jury gave a verdict of three thousand dollars damages against the defendants.

A rule to show cause why there should not be a new trial was obtained, and was argued before the CHIEF JUSTICE, and Justices HAINES, ELMER and BEDLE, by *J. P. Jackson* and *Bradley* for defendants, and *Whitehead* for plaintiff.

The opinion of the court was delivered by

ELMER, J.   The plaintiff's action in this case was for injuries occasioned by one of the defendants' engines striking him on the head, within the limits of the city of Newark, on the afternoon of July 20th, 1864. A verdict having been rendered in his favor, and his damages assessed at three thousand dollars, several reasons have been insisted on for setting aside this verdict and awarding a new trial.

In the first place, it was urged that the evidence did not warrant the jury in finding that the agents of the company had been guilty of any culpable negligence.

It appeared that the plaintiff, a boy of the age of thirteen years and seven months, living near the road, who had been sometimes seen to jump on the cars as they passed, had been sent, by his grand-parent, across the railroad avenue to procure a basket of shavings, and while in the act of returning, was struck by an engine, attached to a regular train, proceeding at the usual time, from the direction of Elizabeth city towards New York. The boy's attention appeared to be directed to a train which at the same time was coming from the opposite direction, on a track near to and east of that on which the Elizabeth train was running, so that he did not see or hear that train; and it was also testified that he was a little hard of hearing. The train coming from New York was the express train, and was said, by the plaintiff's witnesses, to be running at the rate of about twenty-five miles an hour, and made a great deal of noise with the whistle and bell,

while the other train, said to be running at the rate of about fifteen miles an hour, was not heard to ring a bell or blow a whistle, until just as the boy was struck. No evidence was produced by the defendants which materially contradicted these statements, except so far as might be inferred from the fact that the trains were accustomed to stop at a station about six hundred feet distant from the place of the accident.

No street crossed the railroad avenue at the place where the boy was walking; but planks had been laid, by direction of the president of the company, for the convenience of foot passers, upon which he was attempting to cross, and which were opposite to and corresponded with a street called Johnson street, extending eastward from the railway. There were public streets on each side of, and parallel to, the railway tracks. No flagman was stationed at this crossing, but there were flagmen at all the crossings designated in an ordinance of the city regulating that matter, and this ordinance provided that such directions being complied with, the company should be allowed to run their trains at a rate of speed not exceeding twenty miles per hour, as to their mail or express trains, and should not be limited in the speed of their way trains to less than fifteen miles an hour.

There was evidence that the express train, was running at a rate exceeding twenty miles, which it would seem the defendants might have contradicted if it was not true; and there was also evidence that the Elizabeth train that struck the boy gave no proper warning by their whistle or bell.

But throwing these circumstances out of the case, I think the jury were warranted in considering the absence of a flagman, or some other means of protecting persons crossing at a place where trains sometimes met and continued their ordinary speed within the limits of a populous city, as culpable negligence. . The ordinance upon which the defendants so much rely, and which they claim to have strictly complied with, does not refer to, or by any fair inference authorize, the running of two trains, on contiguous tracks, in opposite

directions, so as to pass each other at the rates of speed mentioned. A speed that would be safe for one train alone, might be exceedingly dangerous if kept up by two at the same place. That it was, in fact, highly dangerous, was clearly shown by the evidence in this case.

In coming to this conclusion, I do not overlook the fact, so manifest in the judicial experience of this country and England, that the sympathy of jurors is found very often to overmaster their judgments, so as to require very watchful vigilance by the courts, to prevent great injustice to railway companies who are required by the public sentiment, largely participated in by the jurors themselves, to keep up a high rate of speed. This court has never failed to maintain such vigilance, and is not likely to relax it. But to take every case, however complicated in its details, and doubtful as to its true character, from the decision of the jury, or to interfere with that decision when not manifestly wrong, would be quite as great errors, and quite as dangerous to the community, as to err in the other direction.

Railways are a great public benefit, and for the sake of that benefit our citizens cheerfully submit to the dangers that necessarily result. But the fact, that even when carefully managed, they are liable to do great injury to innocent individuals, makes it very important that every departure from the care and diligence justly demanded of them should be promptly and sternly rebuked. The true limit of discrimination between the court and jury, in deciding such questions, came under the consideration of the Court of Errors, in the case of *The Central Railroad Co.* v. *Moore,* 4 *Zab.* 824. The charge of the judge, in this case, was in conformity with the ruling in that case, and in my opinion the evidence upon the question of negligence was properly submitted to them and rightly decided by the jury.

In the second place, it was insisted that the plaintiff was himself guilty of negligence, and is thus precluded from any right of recovery.

The judge was asked to charge that the plaintiff, by being

on the track when the train was passing, was *prima facie* guilty of negligence, which he declined to do. It was held in the case of *Central Railroad* v. *Moore*, that persons lawfully crossing a railway are bound to use such care and caution, to avoid danger, as ought under all the circumstances to be reasonably expected, and that the judge, in that case, the circumstances of which were more unfavorable to the plaintiff than the present, committed no error in submitting the question to the decision of the jury. The plaintiff here was crossing the avenue for a proper purpose, and could not be held *prima facie* guilty of negligence, merely because he happened to be on the track when the train passed. It appeared that he was carefully watching and keeping out of the way of the express train, then in plain sight. Had not this, or some similar occurrence interfered, he was undoubtedly bound, as was so strongly insisted on behalf of the defendants, to use his eyes and look both ways. But he was not bound to know that the trains would meet at this place, and pass at such an improper speed, which it appears was not generally the fact. To require him to guard against such a danger, under such circumstances, would be to require him to act, not merely with the caution ordinarily to be expected, but with that extreme vigilance which but few persons could be expected to use. The train that injured him gave no warning of its approach, either by the whistle or the bell; or if it did, the greater and nearer noise of the express train hindered the warning from being heard. The case, therefore, differs very materially from those where it has been rightly held, that persons who drive or walk across a railway without proper care to see whether a train was approaching, or with the rash expectation of getting over before it arrived, are so plainly guilty of negligence, that the court is bound so to decide. Like the case of *Moore*, much depended upon the inferences to be drawn from the facts detailed, which it was peculiarly the province of the jury to weigh and determine; and although it is, perhaps, doubtful whether their conclusion was the correct one, it was not so plainly wrong as to call for the interference of the court.

As to the damages, which are complained of as excessive, it is sufficient to remark that the evidence was, that the injury was of a very serious nature, which confined the plaintiff to his bed for a month or six weeks, and so destroyed his eye-sight, that, in the opinion of two physicians who examined him, he would never recover his sight.

In my opinion, the rule to show cause should be discharged, and judgment entered for the plaintiff.

AFFIRMED, 4 *Vroom* 430. CITED in *Vanderbeck et al.* v. *Hendry*, 5 *Vroom* 472; *Bonnell* v. *Del., Lack. & West. R. R. Co.*, 10 *Vroom* 193; *Blakers' Executrix* v. *Receivers of N. J. Midland R. Co.*, 3 *Stew.* 244.