FREDERICK RENZ AND MADELINE RENZ, PLAINTIFFS-APPEL-
LANTS, v. PENN CENTRAL CORPORATION, SUCCESSORS IN
INTEREST TO ROBERT W. BLANCHETTE, RICHARD C.
BOND, AND JOHN H. MACARTHUR, TRUSTEES OF THE
PROPERTY OF PENN CENTRAL TRANSPORTATION CORPO-
RATION, DEFENDANT-RESPONDENT, AND CONSOLIDATED
RAIL CORPORATION, A PENNSYLVANIA CORPORATION,
JOHN DOE, AND RICHARD DOE, UNKNOWN EMPLOYEES
OF THE AFORESAID DEFENDANTS, JOINTLY, SEVERALLY,
AND IN THE ALTERNATIVE, DEFENDANTS.

Argued January 26, 1981—Decided September 28, 1981.

438

*Steven K. Kudatzky* argued the cause for appellants (*Tomar, Parks, Seliger, Simonoff & Adourian,* attorneys; *Ronald A. Graziano,* of counsel).

*William B. Scatchard, Jr.* argued the cause for respondent (*Capehart & Scatchard,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

In this case the plaintiff, Frederick Renz, Jr., then age 15, and four companions were walking along Penn Central Railroad tracks, on April 4, 1975, when Renz attempted to cross between the cars of a stationary train by climbing over the coupling. The train moved as Renz was engaged in this activity and he fell beneath the wheels of the train resulting ultimately in the loss of one leg and a fracture of the other.

Plaintiff by his guardian *ad litem* instituted an action to recover damages for negligence from the railroad and some of its employees. The railroad raised the railroad immunity act, *N.J.S.A.* 48:12–152, as a defense. Plaintiffs moved to strike this defense on the theory that the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1, –5.2, either superseded or modified the railroad immunity act so that comparative fault principles were now applicable in cases like this.

In the Law Division, the plaintiffs' motion was denied. The trial judge reasoned that the railroad immunity act completely exonerates a railroad from liability by absolving it of any duty to trespassers. Because "[n]egligence depends upon an antecedent duty," the court reasoned, contributory negligence, and therefore comparative negligence, could play no part in any action against a railroad.

Following the denial of the motion to strike, plaintiffs moved successfully for leave to appeal the interlocutory determination. This Court then granted direct certification.

I

This appeal, as well as the companion case of *Eden v. Conrail*, 87 *N.J.* 467 (1981), decided today, raise the same important question of whether the railroad immunity act, *N.J.S.A.* 48:12–152, which bars recovery against a railroad for injuries sustained by unauthorized persons engaged in particular activities on railroad property, continues to insulate a railroad from tort liability in light of fundamental changes in our law involving the doctrines of contributory and comparative negligence. In a recent case, *Potter v. Finch & Sons*, 76 *N.J.* 499 (1978), this issue was raised but was not considered because the accident there occurred prior to current statutory changes in our tort laws relating to these doctrines. The consideration and resolution of this issue in this case, however, is timely and cannot be avoided.

The railroad immunity act provides:

> It shall not be lawful for any person other than those connected with or employed upon the railroad to walk along the tracks of any railroad except when the same shall be laid upon a public highway. Any person injured by an engine or car while walking, standing or playing on a railroad or by jumping on or off a car while in motion shall be *deemed to have contributed to the injury sustained and shall not recover therefor any damages* from the company owning or operating the railroad. This section shall not apply to the crossing of a railroad by a person at any lawful public or private crossing. (emphasis added)

The statute was first substantively enacted in 1869, *L.* 1869, *c.* 285. At that time, the enactment consisted only of the second and third sentences of the statute as it now appears. The first sentence was added in 1903, *L.* 1903, *c.* 257, § 55, and except for minor grammatical changes the statute has remained intact since that date.

We note at the outset in construing this enactment that statutory language should be given its ordinary meaning absent specific intent to the contrary. *Levin v. Township of Parsippany-Troy Hills*, 82 *N.J.* 174, 182 (1980); *Abbotts Dairies v. Armstrong*, 14 *N.J.* 319, 325 (1954). Thus, we must first look at the evident wording of the statute to ascertain its plain meaning and intent.

The statute by its unambiguous language provides that any person hurt as a result of walking, standing or playing on or along a railroad or its tracks or jumping on or off a moving railroad car is guilty of contributory negligence. Such a person is deemed to have "contributed to the injury sustained" and the railroad shall not be liable to such person for any personal injuries attributable to that conduct. The clear purport of this language and the gist of its intended meaning is that certain conduct constitutes contributory negligence.

In terms of the applicability of this statute and its viability today, it is important to understand this central theme. That this is the clear meaning of the statute is illuminated by historical reference to the sequential passage of the present law. The statute, as noted, was first enacted in 1869. At that time it referred solely to conduct contributing to injury—contributory negligence—and to the liability of a railroad with respect to certain persons engaged in such conduct. The statute as a matter of law equated certain conduct with contributory negligence which it posited as an absolute affirmative defense barring recovery against a railroad. The statute made no reference to the status of persons covered by its terms and did not explicitly refer to the duty of care owed by a railroad as a landowner or common carrier, nor did it make any reference to trespass or similar doctrines involving landowner duties to persons upon its property.

The later addition of the first sentence of the present statute did not, in any sense, change the essential terms, meaning or import of the statutory immunity. Rather it explicitly made walking along railroad tracks unlawful, clearly intending that this activity is encompassed within the liability provisions of the statute, as well as providing the railroad with additional sanctions against a person engaged in such conduct. See, *e. g.*, *Potter v. Finch & Sons, supra*, (statute applied to an eleven-year-old boy walking on defendant's railroad tracks). *Cf. Furey v. N.Y.C. & H.R.R.R. Co.*, 67 *N.J.L.* 270 (E. & A. 1902) (1869 statute, just prior to the 1903 addition, did not apply to a person

walking across railroad tracks, rather than on them, at a place other than a public crossing). Thus the statute by its straightforward terms provides that persons falling within its scope may not recover damages from a railroad because of the incorporated common law theory of contributory negligence.

The major obstacle to this construction of the railroad immunity act is the judicial interpretation of that statute in *Egan v. Erie R. Co.*, 29 *N.J.* 243 (1959). That Court perceived the provisions of the railroad immunity statute as hinged upon the common law theory of trespass, in effect absolving the railroad of a duty of care to persons engaged in the activities enumerated in the statute. In applying the statute under this interpretation to the facts before it, the *Egan* Court examined New Jersey's common law doctrine of trespass "at the time of the adoption of the statute and for many years thereafter." 29 *N.J.* at 250. The Court, however, focused upon New Jersey jurisprudence in this area as of 1903, the date that the statute was first enacted as a whole. It concluded that under the law of this State, as then codified in the statutory enactment, "a landowner owed no duty to a trespasser other than to refrain from inflicting injury upon him through willful and wanton conduct." *Id.* at 250–251.

Having determined that the statutory enactment codified the common law rule "providing immunity from liability" to a trespasser, *id.* at 251, the Court then reviewed the evolution of common law trespass principles, which had led in more recent times to a "more flexible doctrine," *id.* at 252–253. It concluded, nonetheless, that the Legislature did not intend that the trespass doctrine, as incorporated in the statute in 1903, be altered or modified so as to be fully coincident with what it viewed to be the relevant decisional law at the time of its decision.[1]

---

[1]An assessment of the *Egan* decision, as premised upon the common law doctrine of contributory negligence rather than trespass, which is proffered by the concurring opinion in this case, would greatly simplify our task of ascertaining the Legislature's original intent in enacting the immunity statute.

In view of this analysis by the *Egan* court, then, we cannot conclude with sureness that the legal theory underpinning the statutory enactment was one of contributory negligence rather than trespass based solely upon what appears to be the clear import of the language of the statute. However, because the correct legal theory of the statute is crucial to our analysis of its terms at this time, we must look further to ascertain whether the legislative intent indeed indicates that the clear words of the statute that bespeak contributory negligence are to be disregarded and that trespass is to be deemed the underlying legal theory of the immunity act. In doing so, we agree with the general methodology of the *Egan* Court that such an inquiry must commence with an evaluation of "the common law of New Jersey . . . [a]t the time of the adoption of the statute." 29 *N.J.* at 250. However, in our view, that means a journey back to 1869 and before, since the operative liability provision of the statute was enacted substantially in its current form at that date rather than 1903 when the additional element was added. Thus, the question to be answered is whether the Legislature intended its enactment to negate the railroad's duty to individuals within its scope based upon the doctrine of trespass, as *Egan* viewed the statute, despite the fact that the Legislature chose to frame the statute in terms of contributory negligence and fault.

## II

A century ago, the jurisprudential basis for the principle that no liability attached to a landowner when a person was injured while improperly on his land was not clearly or firmly

---

Nevertheless, we cannot ignore the clear determination in *Egan* that the doctrine of contributory negligence under the immunity statute is "irrelevant," 29 *N.J.* at 251, and that "[t]he effect of the statute is to absolve a railroad company from a duty to a trespasser," *id.* at 248. Indeed the entire *Egan* opinion discussed the common law theory of trespass, not contributory negligence. *Id.* at 248–251. This plainly indicates that the *Egan* Court concluded that the statute conferred immunity upon a railroad by treating persons covered by its terms as trespassers.

settled. At that time non-liability was based upon either lack of duty (the trespass doctrine) or the fault of the injured (a contributory negligence notion). Thus, some cases denying recovery to trespassers talked in terms of a lack of duty to the trespasser; others spoke in terms of the contributory fault of the trespasser.

Many early cases, for example, allowed the question of the liability of landowners to trespassing children to be sent to the jury because they viewed an act of trespass as being potentially or indirectly indicative of negligence. *E. g., Sioux City & Pacific R.R. Co. v. Stout,* 84 *U.S.* (17 *Wall*) 657, 660, 21 *L.Ed.* 745, 748 (1874) (discussing "plaintiff's negligence, whether made in a direct form, or indirectly under the allegation that the plaintiff was a trespasser"); *Daley v. Norwich and Worcester R.R. Co.,* 26 *Conn.* 591, 598 (1858) (trespass did not excuse the defendants from being culpable for their negligence unless the trespasser had contributed to the injury); *Birge v. Gardiner,* 19 *Conn.* 507, 512 (1849) (stating that some acts of trespass involve no fault and that "negligence of the defendant is here the cause of action; and he alone is responsible for the entire consequences of it, unless there has been fault on the plaintiff's part"); *Whirley v. Whiteman,* 38 *Tenn.* 610, 623–624 (1858) ("defendants were guilty of negligence . . . and . . . the supposed wrongful act of plaintiff himself, in trespassing upon the defendant's property, can [not] excuse them from liability"). These cases focused upon the fault of the plaintiff, *i. e.,* a child not knowing enough to be guilty of negligence, rather than any alleged blamelessness of the defendant based upon the theory that the landowner was not possessed of a duty to the plaintiff. Other cases, however, looked at non-liability to an injured trespasser in terms of a lack of duty. *E. g., Vanderbeck v. Hendry,* 34 *N.J.L.* 467, 472 (Sup. Ct. 1871) (question of the plaintiff's negligence was improperly submitted to the jury in that permission granted to traverse the plaintiff's land "creates no duty"); *Morgan v. City of Hallowell,* 57 *Me.* 375, 377 (1869) ("the consequences of an accident [remain] . . . where they belong, upon him who has

wandered out of the way, though he may have been guilty of no negligence in the ordinary acceptation of the term"); *Sweeny v. Old Colony and Newport Railroad Company*, 92 *Mass.* 368, 372 (1865) ("[t]he owner of the land is not bound to protect or provide safeguards for wrongdoers.").

As of 1869 and thereabouts, then, when the railroad immunity statute was initially passed, courts employed two approaches to deny liability to trespassers—one focusing on the presence or absence of a duty on the part of the landowner, and one emphasizing the fault of the victim. In essence, the law had not yet gelled in terms of a single or preferred rationale that would generally govern such cases. See generally Marsh, *The History and Comparative Law of Invitees, Licensees and Trespassers*, 69 *Law.Q.* 182 (1953). It must be assumed that the Legislature, in drafting the initial statute, was aware of these differing approaches. Thus, we perceive that the choice of language employed by the Legislature was no accident. If the Legislature, in enacting the railroad immunity statute, had wanted to adopt an approach focusing upon the presence or absence of landowner duty, and to codify a rule of no duty to trespassers, it could very well have done so simply by relating the statute to the status of the plaintiff vis-a-vis the property of the railroad. Instead, it clearly chose to focus upon plaintiff's action or conduct, employing fault-based language, indicative of principles of negligence, and specifically referring to the doctrine of contributory fault. This is of especial significance because, at this time, the courts of this State had already adopted the doctrine of contributory negligence and had applied it specifically in the context of railroad accidents. *New Jersey Express Co. v. Nichols*, 33 *N.J.L.* 434 (E. & A. 1867); *New Jersey Railroad and Transportation Co. v. West*, 33 *N.J.L.* 430 (E. & A. 1867); *Central Railroad Co. v. Moore*, 24 *N.J.L.* 824 (E. & A. 1854).

Examination of the historical context of the railroad immunity statute, then, discloses no evidence that would warrant the conclusion that the plain wording of this legislation should be ignored. Hence, we conclude that an examination of this back-

ground and a forthright construction of the statute leads to an interpretation of the law that differs in part from *Egan.* While we can agree that the Legislature in clearly stating that individuals "shall be deemed to have contributed to the injury sustained and shall not recover therefor any damages" meant to adopt a relevant, judicially-developed common law doctrine as a predicate for non-liability, we believe it meant to embrace the common law doctrine of contributory negligence, not trespass.

Although the judicial discourse about the legal basis or theory of railroad immunity since that time has not been consistent, the earliest decisions involving the railroad immunity statute support this reading and construction of the statute as based upon contributory negligence. It is reasonably clear that the liability of the railroad was understood to turn upon the quality of conduct engaged in by the plaintiff—not his status as a trespasser—and the affixing of the bar of contributory negligence based upon that conduct. *Powell v. Erie Railroad Co.,* 70 *N.J.L.* 290 (E. & A. 1904); *Diebold v. Pennsylvania R.R. Co.,* 50 *N.J.L* 478 (S.Ct. 1888). In *Powell,* a case where a trespasser attempting to jump on a moving train to catch a free ride was injured, the court, after deciding the case on common law grounds, stated:

> If a statute were needed as support for the proposition that a person injured while jumping on or off a train in motion is guilty of contributory negligence, such an enactment is to be found in *Pamph. L.* 1869, p. 806. [70 *N.J.L* at 293.]

This early interpretation was followed by many subsequent cases which clearly viewed the statute in terms of contributory negligence. *Zelman v. Pennsylvania Railroad Co.,* 93 *N.J.L.* 57 (Sup. Ct. 1919), aff'd 94 *N.J.L.* 283 (E. & A. 1920); *Kowaleski v. Pennsylvania R. Co.,* 103 *F.*2d 827 (3 Cir. 1939), *cert.* den. 308 *U.S.* 556, 60 *S.Ct.* 95, 84 *L.Ed.* 467 (1939); *Erie R. Co. v. Swiderski,* 197 *F.* 521 (3 Cir. 1912); *Cohen v. Pennsylvania-Reading Seashore Lines,* 58 *F.Supp.* 545 (E.D. Pa. 1944); See also *Houston v. Delaware L. & W. R. Co.,* 274 *F.* 599 (3 Cir. 1921); *Lissak v. Pennsylvania R. Co.,* 33 *F.Supp.* 214 (E.D. N.Y. 1940).

Prior to *Egan v. Erie R. Co., supra,* the cases that explicitly stated that the theory of the statute was based upon trespass

were two United States Supreme Court cases, *Erie R. Co. v. Duplak*, 286 *U.S.* 440, 52 *S.Ct.* 610, 76 *L.Ed.* 1214 (1932) and *Erie R. Co. v. Hilt*, 247 *U.S.* 97, 38 *S.Ct.* 435, 62 *L.Ed.* 1003 (1918), *viz*,

> The statute ... seemingly adopts in an unqualified form the policy of the common law as understood, we believe, in New Jersey, Massachusetts, and some other states, that while a landowner cannot intentionally injure or lay traps for a person coming upon his premises without license, he is not bound to provide for the trespasser's safety from other undisclosed dangers, or to interrupt his own otherwise lawful occupations to provide for the chance that someone may be unlawfully there. [286 *U.S.* at 443–444, 52 *S.Ct.* at 611, 76 *L.Ed.* at 1216; 247 *U.S.* at 101, 38 *S.Ct.* at 436, 62 *L.Ed.* at 1005]

The lead case, *Erie R. Co. v. Hilt, supra,* however, in denying liability, relied on a lower court decision from New Jersey, *Barcolini v. Atlantic City & S.R.R. Co.*, 82 *N.J.L.* 107 (Sup. Ct. 1911), which did not mention at all the legislative intent or underlying theory behind the railroad statute but simply applied the clear direction of the statute denying recovery of damages to persons obviously covered by its terms. A later decision by our highest court reached the same result but without any indication that the underlying thesis of the statute was trespass rather than contributory negligence. *Drelich v. Erie R.R. Co.*, 91 *N.J.L.* 600 (E. & A. 1917). Thus the United States Supreme Court did not thoroughly examine the origin and basis of the statute or correctly define the actual meaning and intent of the New Jersey immunity act. Nevertheless, its interpretation was followed in *Egan, supra*,[2] an interpretation which we did not undertake to reexamine in *Potter, supra*. Still, even after *Egan*, the Appellate Division, mindful of the clear terminology of the statute, referred to it as encompassing the principles of contributory negligence. *Kovacs v. Pennsylvania R.R. Co.*, 76 *N.J.Super.* 451, 456–457 (App.Div.1962). See *Felici v. Pennsylvania-Reading Seashore Lines*, 83 *N.J.Super.* 373, 378–379 (App.Div.

---

[2] *Egan* relied also upon *Hess v. Atlantic City Railroad Co.*, 95 *N.J.L.* 494, 496 (E. & A. 1921) which could be read to indicate in dictum that the statute was based upon an underlying theory of trespass. Of course, as we have explained, the words of the statute give rise to the opposite conclusion, a determination also supported by much of the decisional law.

1964) (indicating uncertainty as to whether the underlying theme is one of contributory negligence or trespass).

Until this case today, the consequences of this interpretation of the railroad immunity statute made little practical difference in situations involving railroad liability because most claimants would have been barred from recovery by the plain words of the statute, regardless of whether the statute was deemed to incorporate contributory negligence or trespass. Nevertheless, it is important in the disposition of this case, as well as the companion case of *Eden v. Conrail, supra,* to clarify the true meaning of the statute at the present time in light of significant changes in our tort laws relating to contributory fault, since materially different legal consequences may ensue if the statute is one which predicates railroad immunity upon principles of contributory negligence rather than trespass. We therefore expressly reach and adopt the conclusion that the statute, in stating that individuals "shall be deemed to have contributed to the injury sustained and shall not recover therefor any damages," intended to provide railroad immunity from liability on grounds rooted in the common law theory of contributory negligence.

### III

Given this reevaluation and reinterpretation of the operative statute, we may now approach the main issue before this Court—whether the railroad immunity statute, based as it is upon the common law doctrine of contributory negligence, bars recovery in favor of a person who, while on the tracks without authorization, is negligently injured by a railroad train.

### A

This case in many respects is the sequel to this Court's decision in *Potter v. Finch & Sons, supra.* There a mother, individually and as guardian *ad litem* for her son, sued a railroad and members of the crew of the train which struck her son while he walked along the railroad tracks. The trial court granted

summary judgment in favor of the railroad and its employees, relying on *N.J.S.A.* 48:12–152. The Appellate Division affirmed and this Court then reversed in part. Determining that the railroad statute defines an immunity, and accordingly was to be strictly construed, the Court determined that the act did not apply to railroad employees. Nonetheless, the Court affirmed that the statute barred recovery on behalf of the infant plaintiff against the railroad, other than for willful or wanton conduct.

It was urged in *Potter* that the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1, which replaced the common law defense of contributory negligence with the comparative negligence doctrine, impliedly repealed or otherwise modified the railroad immunity act, serving to replace the absolute bar of contributory negligence provided in that act with the partial bar of comparative negligence. Justice Pashman, responding to this assertion in his dissent, "emphasize[d] that any railroad related injury occurring on or after August 24, 1973—the effective date of the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1—would not be controlled by this case." In his view, after that date, "where [that] salutary enactment and the statutory relic conflict, the former would prevail." *Id.* 76 *N.J.* at 509–510. However, because the accident in that case occurred in December 1972, prior to the effective date of the Comparative Negligence Act, the majority of the Court did not address the question of the impact of the Comparative Negligence Act upon *N.J.S.A.* 48:12–152. *Id.* at 504, n.3. That question is now at hand.

As indicated, plaintiffs urge that in passing the Comparative Negligence Act the Legislature impliedly repealed the railroad immunity act. The implied repealer doctrine, however, is generally disfavored, *City of Camden v. Byrne*, 82 *N.J.* 133, 154 (1980); *New Jersey State P. B. A. v. Morristown*, 65 *N.J.* 160, 164 (1974), and is not required in this case in searching for the proper legislative understanding of the railroad immunity act. That understanding can be reached by a searching examination of the historic purpose of the 1869 enactment. Such an historical review is crucial in ascertaining the appropriate meaning to be

accorded the statute and serves to illuminate its proper application at the present time. This analytic approach is not unlike that undertaken by the Court in *Egan,* 29 *N.J.* at 251–252, to determine whether the Legislature in enacting the immunity statute in 1869 intended to recognize any evolutionary changes in the operative common law doctrine that had been codified in the original statute. As we have construed the statute, however, the operative common law doctrine, which must be subjected to this analysis, is that of contributory negligence, not trespass.

Contributory negligence is a doctrine of the common law. Its origins are judicial, it first having appeared in a reported court decision in 1809, *Butterfield v. Forrester,* 11 *East* 60, 103 *Eng. Rep.* 926. Bohlen, *Contributory Negligence,* 21 *Harv.L.Rev.* 233 (1908); Green, *Illinois Negligence Law,* 39 *Ill.L.Rev. of Northwestern Univ.* 36 (1944); James, *Contributory Negligence,* 62 *Yale L.J.* 691 (1953); Harper and James, *The Law of Torts,* § 22.1 (1956); Prosser, *The Law of Torts* § 65 (1971). It found its way into the common law of this State through judicial decisions in the middle of the last century. *Central Railroad Co. v. Moore,* 24 *N.J.L.* 824 (E. & A. 1854); *Vandergraft v. Rediker,* 22 *N.J.L.* 185 (Sup.Ct.1849). See Note, 1 *Seton Hall L.Rev.* 87 (1970); Note, 26 *Rut.L.Rev.* 383 (1973). As a development of the common law, contributory negligence was based upon judicial perceptions of public policy and social values. Bohlen, *supra*; James, *supra.*

The doctrine of contributory negligence has itself undergone oscillating change in the course of its evolution. Thus, *Central Railroad Co. v. Moore, supra,* in 1854 presents an initial inkling of a judicial uneasiness about the doctrine even at its inception:

> Although it has been supposed that the cases go so far as to decide, that the want of *any degree* of care whatever, however great on the part of the plaintiff, concurring with the negligence of the defendant, will preclude a recovery by the former, we are satisfied, after a careful examination of all the authorities, that no well considered case properly understood, sustains that position. [24 *N.J.L.* at 832, quoting from *Lynch v. Nurdin,* 1 *Adol. & Ellis* 36, N.S.]

Nonetheless, a mere decade later—at the time of this legislative enactment—the doctrine of contributory negligence had come to be viewed as precluding recovery on the part of a negligent plaintiff, regardless of the degree of his culpability. Compare *New Jersey Railroad & Transportation Co. v. West*, 32 *N.J.L.* 91 (Sup.Ct.1866), aff'd 33 *N.J.L.* 430 (E. & A. 1867) with *New Jersey Express Co. v. Nichols*, 33 *N.J.L.* 434 (E. & A. 1867).

Contributory negligence as a common law precept, however, also experienced liberalizing influences. Most significantly, there was judicial recognition that in the application of the contributory negligence defense, it must be shown that plaintiff's conduct is a direct or effective cause of the accident in order to bar recovery. Thus in *Pennsylvania R. R. Co. v. Righter*, 42 *N.J.L.* 180, 183 (E. & A. 1880), the Court adopted what seemed to be significant exceptions to the defense of contributory negligence.

> If, in spite of his negligent act, the injury would have occurred by means of the negligent conduct of the defendant, or if the injury is disconnected from his act by an independent cause, then there is no legal contribution to the injury.

The Court also noted that any "fairly debatable" question as to whether the plaintiff's negligence contributed to the accident is for a jury. *Id.* And similarly, a distinction between "remote" and "proximate" contributory negligence was employed in *Menger v. Laur*, 55 *N.J.L.* 205, 216 (Sup.Ct.1893).

These cases seemed to parallel the doctrine evolving generally, that a defendant was liable, even though the plaintiff contributed to the injury, if the defendant had the last clear chance to avoid the accident. This doctrine of the last clear chance flowed, of course, from metaphysical notions of causation as well as general resistance to the contributory negligence defense. See James, *Last Clear Chance: A Transitional Doctrine*, 47 *Yale L.J.* 704 (1938); MacIntyre, *The Rationale of Last Clear Chance*, 53 *Harv.L.Rev.* 1225 (1940).

The general trend notwithstanding, the Court of Errors and Appeals explicitly and without explanation repudiated the doctrine of last clear chance in *Brennan v. Public Service Ry. Co.*,

106 *N.J.L.* 464 (E. & A. 1930). Although last clear chance was not adopted in this State, however, the distinction between remote or merely conditional contributory negligence, and proximate contributory negligence remained. *Sutton v. Public Service Interstate Transp. Co.*, 157 *F.*2d 947, 948 (2 Cir. 1946), *cert.* den. 330 *U.S.* 828, 67 *S.Ct.* 870, 91 *L.Ed.* 1277 (1946); *Pangborn v. Central Railroad Co. of N. J.*, 18 *N.J.* 84, 100–102 (1955).[3]

Thus, at the time of *Egan*, 1959, the doctrine of contributory negligence, although narrowed, modified and more flexible in allocating burdens, was, in essence, like the doctrine of trespass, intact. This is of importance for we note that even had the *Egan* Court analyzed and applied the law of contributory negligence rather than trespass, it would not and should not have viewed the modifications of that doctrine as reflecting a sufficient shift in underlying policy and social values as to warrant a different application of the statute. The statute was meant to be hinged upon and reflect the doctrine and policy of contributory negligence essentially as it existed at the time of the passage of the legislation for so long as "there existed any reasons which still justly undergird the doctrine." *Merenoff v. Merenoff,* 76 *N.J.* 535, 549 (1978) (involving the common law interspousal immunity doctrine); *Immer v. Risko,* 56 *N.J.* 482, 487 (1970) (same); *Long v. Landy,* 35 *N.J.* 44, 50–51 (1961) (same). As the doctrine of contributory negligence was alive and well as of 1959, we would have reached the same conclusion as the *Egan* Court in regard to the statute at that time.

---

[3]*Contributory negligence was further winnowed away somewhat by the* rulings that the contributory negligence of a third party cannot bar a plaintiff. *Kaufman v. Pennsylvania Railroad Co.,* 2 *N.J.* 318, 323–324 (1949) (passenger in a car was not barred by contributory negligence of driver); *Menth v. Breeze Corp., Inc.,* 4 *N.J.* 428, 441–442 (1950) (defendant who negligently maintained shed in way which promoted the spread of a fire was liable even though another party started the fire); *Rappaport v. Nichols,* 31 *N.J.* 188, 202–206 (1959) (tavern owner who unlawfully sold alcohol to minor was liable to a third party for a traffic accident between the party and the minor even though the minor caused the accident).

## B

We must still evaluate the evolution of the common law doctrine of contributory negligence and the continued viability of the reasons which underlie that doctrine since the time of *Egan.* The major change has been the development and emergence of the doctrine of comparative negligence.[4] As of 1950 comparative negligence had been adopted in the common law jurisdictions of Great Britain, all the Canadian provinces, New Zealand and Western Australia. Prosser, *Comparative Negligence*, 41 *Cal.L.Rev.* 1, 2 (1953). However, as late as 1968, well after this Court's *Egan* opinion, all but seven states still recognized the defense of contributory negligence in its traditional form. G. Schwartz, *Contributory and Comparative Negligence: A Reappraisal*, 87 *Yale L.J.* 697, 697 (1978). Nonetheless, comparative negligence has since attracted overwhelming support in the United States and by 1974 it had become the majority rule. *Id.* It is now accepted in over 40 states. See Symposium, 82 *W.Va.L.Rev.* 473, 477–478, n. 30–31 (1980).

In 1973 the Supreme Court of Florida became the first American court in this century judicially to adopt comparative negligence. *Hoffman v. Jones*, 280 *So.*2d 431 (Fla.). In a relatively short period many courts have followed Florida. Judicial adoption of the doctrine of comparative negligence is now well-accepted in practice as well as theory. *Li v. Yellow Cab Co. of California*, 119 *Cal.Rptr.* 858, 13 *Cal.*3d 804, 532 *P.*2d 1226 (1975); *United States v. Reliable Transfer Co.*, 421 *U.S.* 397, 95 *S.Ct.* 1708, 44 *L.Ed.*2d 251 (1975) (admiralty); *Kaatz v. State*,

---

[4]Additionally, the notion that remote negligence would not bar a plaintiff was expanded so that contributory negligence must have been a "substantial factor" in order to bar recovery. *O'Brien v. Bethlehem Steel Corporation*, 59 *N.J.* 114, 124–125 (1971). See also *Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc.*, 53 *N.J.* 157, 165 (1969). *Cf. Latta v. Caulfield*, 79 *N.J.* 128, 133 (1979) (distinction between plaintiff who "contributed directly" to the result and cannot recover and the situation where plaintiff's negligence "was only remotely or indirectly involved.")

540 *P.2d* 1037 (Alaska S.Ct.1975); *Kirby v. Larson,* 400 *Mich.* 585, 256 *N.W.2d* 400 (1977); *Bradley v. Appalachian Power Co.,* 256 *S.E.2d* 879 (W.Va.S.Ct.1979); *Scott v. Rizzo,* 634 *P.2d* 1234 (N.M.S.Ct.1981); *Alvis v. Ribar,* 85 *Ill.App.3d* 1, 52 *Ill.Dec.* 23, 421 *N.E.2d* 886 (1981). Thus, fears about comparative negligence have diminished and it now is an overwhelmingly accepted rule of jurisprudence almost everywhere. See Prosser, *supra,* 41 *Cal.L.Rev.* 1; Keeton, *Creative Continuity in the Law of Torts,* 75 *Harv.L.Rev.* 463 (1962); Symposium, 21 *Vanderbilt L.Rev.* 889 (1968); V. Schwartz, *Comparative Negligence* (1974); G. Schwartz, *supra,* 87 *Yale L.J.* 697; Keeton, *Legal Process and Comparative Negligence Cases,* 17 *Harv.J.Legis.* 1 (1980); Symposium, *supra,* 82 *W.Va.L.Rev.* 473. But *cf.* Powell, *Contributory Negligence: A Necessary Check on the American Jury,* 43 *A.B.A.J.* 1005 (1957).

The policy reasons for the judicial adoption of comparative negligence were forcefully expressed by Justice Francis in a concurring opinion in *O'Brien v. Bethlehem Steel Corporation,* 59 *N.J.* 114, 125 (1971) (the case in which a four-person majority of the Court first held that contributory negligence must be a "substantial factor" to be a bar). Justice Francis, with whom Justice Proctor joined, stated:

> The rule that contributory negligence is a complete bar to recovery was imported into the common law by judges. Whatever may have been the historical justification for it, today it is almost universally regarded as unjust and inequitable to visit an entire accidental loss on one of the parties whose negligent conduct combined with the negligence of the other party to produce the loss. If fault is to remain the test of liability, then the doctrine of comparative negligence which involves apportionment of the loss among those whose fault contributed to the occurrence is more consistent with liability based on a fault premise.
>
> The principle of comparative negligence represents a more just and socially desirable distribution of loss than that ever achieved by the application of the long-standing rule of contributory negligence. I believe also that if comparative negligence were to be made applicable in our State, pre-courthousesteps settlements would be encouraged; there would be more waivers of jury trial; trial delays would be less of a problem; and calendars would be less clogged.

Since the present bar of contributory negligence is judge-made law, our authority to humanize that law by adopting comparative negligence is not open to reasonable question, and the time seems ripe to make the change. [*Id.* at 126.]

The Court did not feel the need to act upon Justice Francis' suggestion and decided the case on narrow grounds. Nonetheless, the velocity of the rushing tide was growing; there was heightened recognition that the reasons underpinning contributory negligence were flawed, discordant with notions of social justice and out of harmony with contemporary values.

The Legislature itself obviated the need for direct judicial action by adopting an act providing for comparative negligence, effective on May 24, 1973. *N.J.S.A.* 2A:15–5.1, –5.2. In recognizing the fundamental changes in public policy since the origins of the doctrine of contributory negligence and the irresistable demand for a more just framework for imposing liability, permitting redress and apportioning losses for personal injuries in the tort field, the Legislature pointedly stigmatized the harsh and anachronistic doctrine of contributory negligence, *viz*:

This legislation modifies the most outmoded and unjust law of this State, that is the law of contributory negligence. [Statement accompanying *L.* 1973, *c.* 146.]

The Legislature, in essence, gave a parliamentary endorsement to an insistent and undeniable public policy, filling a breach in our legal system which the courts could well have filled themselves in the exercise of their powers to expound the common law.

This evolution of the common law principle of comparative negligence has also been witnessed in our jurisprudence involving strict liability. Thus, in *Ettin v. Ava Truck Leasing, Inc.*, 53 *N.J.* 463, 474 (1969) the Court, per Justice Jacobs, indicated that judicial adoption of comparative negligence principles might be welcome. And, the Comparative Negligence Act was recently deemed applicable to strict liability actions "in those circumscribed areas in which plaintiff's conduct may be found to constitute contributory negligence." *Suter v. San Angelo Foundry & Machine Co.*, 81 *N.J.* 150, 164 (1979). Importantly, Justice Schreiber writing for the Court noted that "we are not

unmindful that comparative negligence could be judicially adopted in strict liability cases." *Id.* at 163, n. 3.

Accordingly, it is clear that the common law of this jurisdiction has undergone massive change since the adoption of the railroad immunity act in 1869. This Court is today compelled to recognize that contributory negligence is no longer a part of New Jersey common law jurisprudence, for the reasons which originally justified the doctrine's birth have evanesced and its historically supportive values no longer nourish its continued survival. This conclusion is firmly buttressed, though not alone dictated by, the significant statutory enactment of the comparative negligence doctrine and the express legislative repudiation of contributory negligence. Legislative action on this scale serves as a forceful "generative impulse into the common law," especially relevant to the judiciary which is engaged in the decisional growth of the common law. *Haynes v. First Nat'l State Bank,* 87 *N.J.* 163, 188–89 (1981); *Lally v. Copygraphics,* 85 *N.J.* 668, 670 (1981); *Van Beeck v. Sabine Towing Co.,* 300 *U.S.* 342, 351, 57 *S.Ct.* 452, 456, 81 *L.Ed.* 685, 690 (1937). In short, the statute confirms that the policies which originally underlay the doctrine of contributory negligence no longer exist; the mores which gave rise to the doctrine have become moribund and have been replaced by a different set of values both in this jurisdiction and throughout the nation. It is now recognized, realistically and justly, that responsibility for tortious injury is frequently authored by and shared between victims and tortfeasors alike. Consequently, liability for resultant injury similarly should mirror the responsibilities of the participants and be apportioned in accordance with their combined fault.

Thus, we conclude that comparative negligence, an entirely new doctrine based upon fundamentally different legal theories, policies and social values, has replaced the common law doctrine of contributory negligence. To the extent the common law continues to address and determine issues relating to liability in the personal injury tort field, it must now be developed and

applied in a manner consistent with the new doctrine, as presently defined by *N.J.S.A.* 2A:15–5.1.[5]

## C

We must next determine whether the Legislature, in rooting the railroad immunity act in the common law of contributory negligence, intended for that codification to remain immutable and unchanged, as a matter of its prospective application, in the face of a total abolition of its underlying common law foundation.

In confronting this question we must give full weight to the maxim of statutory construction that the railroad immunity act is, like all immunity statutes, to be strictly and narrowly construed. *Potter v. Finch & Sons, supra,* 76 *N.J.* at 502. See *Harrison v. Middlesex Water Co.,* 80 *N.J.* 391, 401–402 (1979) (landowner's immunity statute strictly construed); *Immer v. Risko, supra* 56 *N.J.* at 487–488 (marital immunity statute strictly construed). Examples of this strict construction of the railroad immunity statute abound. Thus, railroad employees have not been allowed to assert this statutory bar, *Potter, supra;* and the statute has been deemed inapplicable to a child injured when he struck an electric wire while crawling on top of a railroad car, *Jasiczek v. Penna. R.R.,* 90 *N.J.Super.* 380 (App.Div. 1966), certif. den. 49 *N.J.* 366 (1967), a rescuer of an unauthorized person on tracks contrary to the act, *Demetro v. Penna. R.R.,* 90 *N.J.Super.* 308 (App.Div.1966), a passenger who was knocked off a railroad car step by a girder, while resting on the step after having run to catch the train, *Lehigh Valley R. Co. v.*

---

[5]The statute specifically provides:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person 'against whom recovery is sought, but any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering.

*Stevenson,* 17 *F.*2d 748 (3 Cir. 1927), and, prior to the 1903 amendment, a person walking across railroad tracks rather than walking, standing or playing on them, *Furey v. N.Y.C. & H.R.R.R Co.,* 67 *N.J.L.* 270, 278 (E. & A. 1902), but *cf. Felici v. Pennsylvania-Reading Seashore Lines, supra,* 83 *N.J.Super.* at 378–379. This strict construction of the immunity statute recognizes that immunities generally serve to bar or curtail recovery rather than to define wrongful conduct or exonerate wrongdoing; a wrongful act is no less a wrong and does not lose its tortious quality simply because liability is precluded by the superimposition of an immunity against the consequences of the act. *Tevis v. Tevis,* 79 *N.J.* 422, 429 (1979); *Merenoff v. Merenoff, supra,* 76 *N.J.* at 547–549; *Long v. Landy, supra,* 35 *N.J.* at 50. Also relevant to our determination herein is the principle that in order to remain meaningful law, a statute must sometimes be given an application to situations unknown or nonexistent or not anticipated at the time of its enactment, which are, nevertheless, fairly to be viewed as within the original legislative intendment. Thus, fundamental changes in the use of property, *e. g., Harrison v. Middlesex Water Co., supra,* in interpersonal relationships, *e. g., Merenoff v. Merenoff, supra,* in governmental interrelationships, *e. g., Safeway Trails Inc. v. Furman,* 41 *N.J.* 467, 477 (1964), *cert.* den. 379 *U.S.* 14, 85 *S.Ct.* 144, 13 *L.Ed.*2d 84 (1964), and even in perceptions of criminality, *e.g., State v. Young,* 77 *N.J.* 245 (1978), that were unforeseen at the time of initial legislative action, have required the reinterpretation and fresh application of relevant statutory law in order to avoid the inadvertent and unintended creation of a statutory anomaly or hiatus and to preserve for such legislation a sensible place in the contemporary scene.

Cognizant of these guidelines, we must recognize the pervasive and profound change in our tort laws wrought by the doctrine of comparative negligence. We cannot attribute to the Legislature an intent that its original enactment remain inflexible and impervious to such a dramatic and avulsive change in

jurisprudential principles and the reasons underlying those principles.[6]   See Keeton, *supra*, 75 *Harv.L.Rev.* 463.

Consequently, it is our determination that there is to be imputed a legislative intent in the enactment of the railroad immunity act to replace the original but now extinct common law rule of contributory negligence with the new doctrine of

---

[6]In this respect, our analysis is not totally dissimilar to the notion that the current Legislature has impliedly repealed the railroad immunity act by its enactment of the Comparative Negligence Act. *Ante* at 449–450. Had the Legislature in passing the Comparative Negligence Act in 1972 realized that the 1869 railroad immunity act was actually based upon the underlying doctrine of contributory negligence, rather than trespass as our jurisprudence had dictated at that time, it may very well have been inferable that the enactment of the Comparative Negligence Act intended implicitly to disavow or modify contrary doctrines, like that incorporated in the railroad immunity act.

However, a fair reading of the *Egan* decision leads to the conclusion that the statute was generally viewed as a trespasser statute at the time that the Comparative Negligence Act was enacted. See *ante* at 442. There is nothing to suggest that the Legislature in 1972 entertained a different conception of the railroad immunity statute. Thus, since implied repealers are generally disfavored and reluctantly invoked, *e. g., Camden v. Byrne,* 82 *N.J.,* 133 (1980), we believe it unsound to impute to the 1972 Legislature an intent to repeal the railroad immunity act.

Also bearing generally upon the application of the implied repealer doctrine is the fact that the Legislature, subsequent to the enactment of the Comparative Negligence Act, passed S. Bill No. 1454 (1978), which would have explicitly repealed the railroad immunity act. Since this proposed repealer was vetoed by the Governor and thus was not enacted into law, it is not evidence of an intent on the part of the earlier Legislature to repeal by implication the immunity statute when it passed the Comparative Negligence Act. See *Garden State Farms, Inc. v. Bay,* 77 *N.J.* 439, 453 (1978); *Schmoll v. Creecy,* 54 *N.J.* 194, 203 (1969); *Fraser v. Robin Dee Day Camp,* 44 *N.J.* 480, 487 (1965); *Bd. of Ed. of Asbury Park v. Hoek,* 38 *N.J.* 213, 235–236 (1962). Indeed, it is somewhat evidential of the view that the Comparative Negligence Act does not address the railroad immunity statute. Nevertheless, the attempted passage of an express repealer, actuated in part upon recognition and acceptance of judicial criticism of the railroad immunity statute, *e. g., Potter v. Finch, supra,* and the legislative repudiation of contributory negligence, does serve to strengthen our conclusion that public policy today can no longer accommodate the old doctrine of contributory negligence.

comparative negligence.[7] Since *N.J.S.A.* 2A:15–5.1 both exemplifies and codifies the new common law doctrine, as a matter of imputed initial legislative intent, the later enactment must be infused into the railroad immunity statute.

Accordingly, we reverse the determination below and remand the case for trial. In this new trial, the court should apply the statute as construed to the factual situation present in this appeal—a person struck and injured while attempting to walk between railroad cars which he thought were stationary. The doctrine of comparative negligence would apply to such a person and, as engrafted upon the railroad immunity act, the conduct of that individual, bringing him within the coverage of the act, would constitute minimal or threshold negligence. However, such imputed negligence alone would not bar the plaintiff from recovery. It would be up to the jury to apply the comparative negligence doctrine under *N.J.S.A.* 2A:15–5.1 *et seq.* recognizing that the defendant railroad bears the burden of proof to establish under all of the circumstances, the extent or degree of plaintiff's negligence in terms of its contribution to the resulting accidental injury. Only if that negligence on a

---

[7]We find further support for our interpretation that the original Legislature in passing the immunity statute based on a common law doctrine did not mandate a stoical and inflexible indifference to later upheavals in the common law. The Legislature's grant of immunity to a railroad through the imposition of contributory negligence is not unrelated to other legislative grants of immunity. Thus, with respect to interspousal tort immunity, a common law doctrine, this Court recognized that the legislative adoption of a statute restricting the ability of married persons to sue one another did not "rigidly" incorporate interspousal immunity. Rather, "immunity should apply only where the reasons for its existence continue" and should "disappear" when the policy behind it no longer exists. *Immer v. Risko,* 56 *N.J.* 482, 487 (1970). *Accord Merenoff v. Merenoff,* 76 *N.J.* 535, 548–549 (1978). Additional support for our holding is found in the correlative situation which confronted the California Supreme Court in *Li v. Yellow Cab Co. of California,* 119 *Cal.Rptr.* 858, 13 *Cal.*3d 804, 532 *P.*2d 1226 (1975). There the court judicially adopted comparative negligence despite a statutory enactment in 1872 which had codified a version of the doctrine of contributory negligence.

comparative basis exceeds that of the railroad would it serve to bar recovery.[8]

## IV

We feel compelled to address an additional area raised by our interpretation of the statute. Our determination that the railroad immunity act is grounded on principles of negligence, of course, does not mean that the railroad as a property owner is deprived of the normal and traditional protection concerning the liability of landowners to persons coming upon private property.

Since the contention that plaintiff was a trespasser was raised initially in this litigation by the railroad to invoke the absolute bar of the railroad immunity act, it is reasonably to be anticipated that the railroad will pursue the contention that plaintiff is a trespasser at common law in order to avail itself of the lesser duty of care owed in such circumstances. It is appropriate then to consider and discuss briefly the common law doctrine of trespass, as it will likely be relevant in the retrial of this matter.

Traditionally, a landowner owed no duty to a trespasser other than to refrain from acts willfully injurious. *E. g., Kaproli v. Central R.R. of N.J.*, 105 *N.J.L.* 225, 227–228 (E. & A. 1928); *Staub v. Public Service Railway Co.*, 97 *N.J.L.* 297, 299 (E. & A. 1922); *Hoberg v. Collins, Lavery & Co.*, 80 *N.J.L.* 425, 427 (E. & A. 1910); *Dierkes v. Hauxhurst Land Co.*, 80 *N.J.L.* 369, 370–371 (E. & A. 1911). Nevertheless, in the evolution of the common law of trespass some accommodation of negligence principles has occurred. See, *e. g., Snyder v. I. Jay Realty Co.*,

---

[8]Our decision today is to be given prospective effect, except as to its application to plaintiffs. *Merenoff v. Merenoff, supra; Darrow v. Hanover Township*, 58 *N.J.* 410 (1971). It is recognized, of course, that our determination modifying the common law basis of the statutory railroad immunity does not prevent the Legislature from taking further legislative action in this area. Compare *Willis, et. al. v. Dept. of Cons. & Ec. Dev.*, 55 *N.J.* 534 (1970), with *N.J.S.A.* 59:1–1 *et seq.* (sovereign immunity) and *Collopy v. Newark Eye and Ear Infirmary*, 27 *N.J.* 29 (1959) with *N.J.S.A.* 2A:53A–7, –8 (eleemosynary immunity).

30 *N.J.* 303 (1959); *Egan v. Erie R. Co., supra,* 29 *N.J.* at 251–252; *Imre v. Riegel Paper Corp.,* 24 *N.J.* 438 (1957); *Taylor v. N.J. Highway Authority,* 22 *N.J.* 454 (1956); *Caroff v. Liberty Lumber Company,* 146 *N.J.Super.* 353 (App.Div. 1977), certif. den. 74 *N.J.* 266 (1977). In this vein the Court in *Egan v. Erie R. Co., supra,* observed that

[i]n recent years our courts have restricted the previous common-law policy as to the nonliability of the owner of land to trespassers. Humanitarian considerations and reasons of social policy have led to a more flexible doctrine balancing the landowner's right to the use of his land with society's interest in the protection of its youth against injury. [29 *N.J.* at 251–252.]

Thus, the doctrine of trespass is not rigid; rather, it is "sufficiently flexible to fulfill the purposes of our legal system in serving the needs of present day society." *Snyder v. I. Jay Realty, supra,* 30 *N.J.* at 311 (reaffirming the traditional categories of trespasser, licensee and invitee).

Moreover, we note that there has long been an established exception to the general rules governing landowner liability to trespassers, whereby property owners are subject to a higher standard of care when the property owned by the landowner can be classified as a dangerous instrumentality. See, *e. g., Imre v. Riegel Paper Corp., supra; Harris v. Mentes Williams Co., Inc.,* 11 *N.J.* 559 (1953); *Strang v. South Jersey Broadcasting Co.,* 9 *N.J.* 38 (1952); *Spenzierato v. Our Lady Monte etc., E. Orange,* 112 *N.J.L.* 93 (E. & A. 1934); *Piraccini v. Director General of Railroads,* 95 *N.J.L.* 114 (E. & A. 1920); *Van Winkle v. American Steam Boiler Co.,* 52 *N.J.L.* 240 (Sup. Ct. 1890). In this regard, Judge Fritz, writing for the majority of the Appellate Division, in the companion case of *Eden v. Conrail,* pointedly observed:

Even as to a trespasser the old common law doctrine that an owner of land owed him no duty of care except to refrain from causing injury to such person by willful or wanton conduct has been modified "so as to put the interest of the parties in better balance." *Potter v. Finch & Sons, supra,* 76 *N.J.* at 504. Especially with respect to instrumentalities possessing a real potential for grievous bodily harm, the standard of duty is the protection of others against an unreasonable risk of that harm. *Imre v. Riegel Paper Corp., supra,* 24 *N.J.* at 444. That principle has for years been applied to the benefit of infant trespassers in cases where the trespass has been discovered or where there was reason to

anticipate it. *Strang v. South Jersey Broadcasting Co.*, 9 *N.J.* 38 [86 A.2d 77]. [175 *N.J.Super.* 263 at 279–280.]

The general question of the duty of care owed to a trespasser by a railroad, including the question of whether the railroad is to be considered a dangerous instrumentality owing a higher duty of care, was not anticipated, addressed or fully argued on this appeal. Consequently, it is not appropriate or fair to the parties for us to undertake to resolve these questions. However, the issues are raised for the guidance of the litigants and the trial court in order to enable the parties to present their evidence and contentions with respect to these issues and for the trial judge properly to consider under proofs presented the appropriate duty of care owed a trespasser and to determine whether a railroad is to be regarded a dangerous instrumentality—a classification which was not considered relevant because of the preclusive effect of *N.J.S.A.* 48:12–152.

Reversed and remanded. Jurisdiction is not retained.

SCHREIBER, J., concurring.

The majority opinion misconstrues the Railroad Immunity Act, *N.J.S.A.* 48:12–152, and unnecessarily eliminates the common law doctrine of contributory negligence. A sweeping generality binds a court to an unknown future. Flexibility and progress in the judicial process are frequently inhibited or lost when broad principles are unnecessarily adopted. When the statute is correctly construed, the undesirability of the majority's approach is apparent.

The statute describes certain acts which constitute negligence. The Legislature has not chosen to change the effect of this conduct. It is unnecessary, as the majority does, to reexamine the common law doctrine of contributory negligence. Rather, the only issue is whether the Comparative Negligence Act has had any effect on the contributory negligence ascribed by the Railroad Immunity Act to the conduct described therein.

*Egan v. Erie R. Co.*, 29 *N.J.* 243 (1959), correctly construed *N.J.S.A.* 48:12–152 to apply to certain behavior. Unlike the majority I do not read *Egan* as interpreting *N.J.S.A.* 48:12–152 to be a "trespasser" statute. That case involved a seven-year-old girl who was injured while attempting to board a moving freight train. The railroad's employees knew that children were accustomed to playing upon the tracks in the vicinity of the accident. The plaintiff sought to bring her action within the scope of *Strang v. South Jersey Broadcasting Co.*, 9 *N.J.* 38 (1952), and *Harris v. Mentes-Williams Co.*, 11 *N.J.* 559 (1953), cases which held a property owner was liable to trespassing children of tender years whose presence should have been anticipated and who were injured due to the property owner's use of a dangerous instrumentality or creation of a dangerous condition. Plaintiff also sought to show that as an infant she could not be guilty of contributory negligence and, since the statute referred to contributory fault, it was inapplicable.

*Egan* reasoned that "[t]he *effect* of the statute is to absolve a railroad company from a duty to a trespasser." 29 *N.J.* at 248 (emphasis added). However, *Egan* did *not* limit the applicability of *N.J.S.A.* 48:12–152 to trespassers. *Egan* noted that at common law the landowner owed no duty to trespassers other than to refrain from wilful and wanton conduct and that this principle had been applied to railroads, so that their immunity from liability was not predicated upon the statute. *Kaproli v. Central R. R. of N.J.*, 105 *N.J.L.* 225 (E. & A. 1928). Under the Railroad Immunity Act, the plaintiff's activity was deemed to have "contributed to the injury sustained." *Egan* pointed out that at common law "it was unnecessary to consider the question of the trespasser's contributory negligence. Contributory negligence only [became] a factor when there [had] been a breach of duty by the alleged tortfeasor." 29 *N.J.* at 251. *Egan* concluded "that the statute was enacted for the purpose of providing immunity from liability in those cases that come within the *factual situations* set forth therein." *Id.* at 251 (emphasis added). Accordingly, *Egan* stands for the proposition

that the statute applies to a person irrespective of his status as an infant trespasser provided he is injured while walking, standing, or playing on a railroad or jumping on or off a car while in motion. Such strict construction is consonant with the policy expressed in *Potter v. Finch & Sons*, 76 *N.J.* 499 (1978), that the statute as an immunity act be strictly construed.

The statute is directed to conduct, not status. It must be borne in mind that under our decisional law a plaintiff's status is a factor in determining the duty owed by a property owner. Status is inextricably intertwined with the scope of the duty owed by the property owner. Only after that duty is defined and a breach ascertained is attention directed to the plaintiff's conduct. The structure of the statute, though, addresses the plaintiff's conduct irrespective of his status.

If the plaintiff's conduct falls within the proscribed statutory areas, he is deemed to have contributed to the injury and recovery is barred. In enacting the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 *et seq.*, the Legislature provided that "[c]ontributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property." The Act states that "[i]n *all* negligence actions in which the question of liability is in dispute," the fact finder is to determine the total amount of damages and the respective percentages of the plaintiff's and defendant's negligence. *N.J.S.A.* 2A:15–5.2. The Act has been interpreted broadly because "[i]t was the legislative belief that the Comparative Negligence Act would ameliorate to some extent the harshness which could result in application of contributory negligence in *all* tort actions." *Suter v. San Angelo Foundry & Machine Company*, 81 *N.J.* 150, 161 (1979) (emphasis added). M. Iavicoli, legal counsel to the No Fault Commission, who formulated and drafted the legislation observed:

> One must not be mislead [*sic*] as to the effect of the Comparative Negligence Act by the fact that the comparative negligence recommendation emanated from the Automobile Insurance Study Commission. The New Jersey Comparative

Negligence Act applies to *all* negligence actions wherein fault concepts apply in ascertaining the presence or absence of a deviation from the community standard of conduct, such as, product liability accidents, malpractice liability accidents, motor vehicle liability accidents, slip and fall liability accidents, *railroad liability accidents,* airplane liability accidents, etc. [M. Iavicoli, *No Fault & Comparative Negligence in New Jersey* (1973), at 173 (second emphasis added)]

The sweeping language of the Act and the legislative desire to restrict the conclusive effect of contributory negligence satisfy me that the Legislature also intended to loosen the total bar attributed to contributory negligence in *N.J.S.A.* 48:12–152 and modified that statute accordingly.[1]

The majority's analysis leads to the same result in this case. However, in so doing, it substitutes judicial policy for legislative intent. In this respect I agree with *Egan* which refused to modify the statute to accommodate the change in the decisional law regarding trespassing infants because

to do so would be a judicial usurpation of the legislative function. There is no question that the Legislature, subject to constitutional limitations, may fix the State's policy as to rules of conduct which result in liability or non-liability. [citations omitted] In such circumstances it is the duty of the court to apply the legislative will notwithstanding that it may conflict with the court's own philosophy. [29 *N.J.* at 252]

More importantly the majority has abolished the doctrine of contributory negligence. The majority has not considered the effect of its elimination in situations other than personal injury actions. The judicial process is better served by retaining flexibility which is lost or limited when a sweeping general principle is adopted.

---

[1] In a comparable situation this Court acknowledged that the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 *et seq.*, modified the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A–3. *Cartel Capital Corp. v. Fireco of New Jersey,* 81 *N.J.* 548, 569 (1980). The majority fails to perceive or acknowledge the difference between a statutory modification and implied repeal of the Railroad Immunity Act.

The majority's reliance on the legislative attempt to repeal the Railroad Immunity Act, S. Bill No. 1454 (1978), aborted by the Governor's veto, as supportive of its position is misplaced. The Legislature acted solely in response to Justice Pashman's dissent in *Potter v. Finch.* If the Legislature had had its way, the Act would be extinct.

Justice PASHMAN joins in this opinion.

PASHMAN and SCHREIBER, JJ., concurring in the result.

*For reversal and remandment*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For Affirmance*—None.